Argued 22 December, 1903; decided 1 February, 1904.

## DALLAS *v.* HALLOCK.

[75 Pac. 204.]

MUNICIPALITIES—EXTENT OF POWER OF EMINENT DOMAIN.

1. A statute authorizing a city to construct and maintain waterworks, and to condemn real property, waters, streams and riparian rights, if it shall not be able to agree with the owners as to the price thereof (Charter of Dallas City, § 51, Sp. Laws 1903, p. 671), confers ample authority to begin and carry on legal proceedings in the nature of eminent domain to procure land and water for a contemplated system of waterworks.

EMINENT DOMAIN—JUDICIAL AND LEGISLATIVE QUESTIONS.

2. Whether a proposed taking of private property under a claim of eminent domain is in fact for a public use is a judicial question, though the expediency and extent of the taking are legislative in character.

EMINENT DOMAIN—SUFFICIENCY OF COMPLAINT.

3. A complaint in an action to condemn private property "necessary or convenient" for a system of waterworks, which shows that in order to carry out the plans adopted it will be necessary to use a certain described strip of defendant's land, and to divert into the pipe line a specified amount of the water of a stream flowing past and through defendant's property, sufficiently states that the property so designated is necessary for the use designated, and, being necessary, its convenience is immaterial.

DISCRETION AS TO PROPERTY TO BE CONDEMNED.

4. Where a city is empowered to condemn property for a waterworks system without any limitations confining its choice to any particular property, it has a discretion, within reasonable limits, to choose the source of its water supply, the route of its pipe lines, and the location of its reservoirs and pumping stations; and, unless there is a clear abuse of this discretion to the detriment of private individuals and property rights, the courts cannot interfere to control it, and the mere fact that a supply of water can be had from a more convenient and less expensive source is no objection to an action for condemnation by the city.

CONSTRUCTION OF CHARTER—MODE OF PROCEEDING.

5. Dallas City Charter, § 27, authorizes the city, *inter alia*, to erect, construct, and purchase waterworks, and section 51, in addition to granting the same power, provides as well for the exercise of eminent domain for procuring property therefor in case of inability to purchase the same. *Held,* that the latter power is distinct from the power conferred by section 27, and, not being included in the latter section, its exercise is not subject to a provision in section 28 that the power or authority granted by section 27 can be exercised only by ordinance unless otherwise specified, and a resolution is accordingly adequate for the purpose of instituting an action under such section 51.

AVAILABILITY OF OBJECTIONS TO CONDEMNATION PROCEEDINGS.

6. Where a contract by a city for the construction of a waterworks system contemplates that the city shall own the system when completed, the fact that the builder, as a part consideration for its construction, is to take as lessee the tolls for a term of years, does not affect the right to construct, and for that purpose to acquire the easements necessary thereto. This being the case, persons not residents, inhabitants or taxpayers of the city, but whose land and water are being condemned, will not be heard to discuss the objection that to lease the completed plant will be *ultra vires*, since their only interest is in the right to appropriate and the price to be paid.

EMINENT DOMAIN—NEED OF PROVIDING PRESENT FUNDS.

7. Where a city is authorized to contract for the construction of a waterworks system, as well as to purchase the property necessary therefor, it is unnecessary that it provide for meeting the payments contemplated before exercising the right of eminent domain; but, even if it were required to do so, it could not affect defendants in condemnation proceedings who were neither residents of the city nor taxpayers therein, for their demands are subserved when the money is paid into court for them, regardless of where it comes from.

CHARTER—AUTHORITY FOR CONDEMNATION.

8. Dallas City Charter, § 51 (Sp. Laws 1903, p. 671), having authorized an action to condemn property for waterworks, and prescribed only that the proceedings therein should be the same as those provided by the general laws for condemnation for railroad purposes, it was not necessary to submit the question of whether it would institute the action and make payment to a vote of the taxpayers pursuant to B. & C. Comp. § 5103.

From Polk: GEORGE H. BURNETT, Judge.

This is an action by the City of Dallas instituted in the exercise of the right of eminent domain to condemn certain rights of way over and upon the premises of the defendant Mary E. Hallock for conducting water from Canyon Creek, a tributary of La Creole Creek, to the City of Dallas; also a reservoir site and 500,000 gallons of water flowing every twenty-four hours in La Creole Creek for the construction, maintenance, and operation of a system of waterworks in said city. The complaint sets forth the incorporation of the plaintiff as a municipality, the adoption by the common council on September 17, 1902, of Ordinance No. 23, providing for supplying the city and its inhabitants with water for public and private use, and contracting with H. V. Gates, his successors or assigns, for the construction of a water plant within and for the city, and for the payment to him of $12,000, and a lease of the plant for a period of twenty years, or until terminated by

agreement of the contracting parties; the adoption on March 23, 1903, of Resolution No. 17, selecting the real property, water, and water rights sought to be appropriated and condemned; the adoption on April 20th following of Resolution No. 19, providing that the city shall by proper action appropriate and condemn the property, rights of way, water, and water rights selected by Resolution No. 17; that the city is proceeding to construct the plant; that in the construction, maintenance, and operation thereof it is necessary for plaintiff to lay down and construct a pipe line on and above the lands of Mrs. Hallock, and for that purpose to condemn a strip 20 feet wide, particularly describing the same, with its termini and location upon the ground and a site for reservoir purposes; that it is also necessary for the purposes indicated to appropriate and condemn 500,000 gallons each and every twenty-four hours of the water of La Creole Creek, flowing past and through her premises; and that the parties plaintiff and defendant are unable to agree upon suitable compensation for the several rights and properties involved. A demurrer interposed to the complaint was overruled, and the defendants answered, setting up, first, damages on account of the appropriation of the lands, water, and water rights; and, second, that the City of Dallas can be supplied with abundant and wholesome water by appropriation from streams flowing into La Creole Creek below the water power of the defendant Hallock, which can be utilized at 25 per cent less cost than from Canyon Creek; and praying that the complaint be dismissed, but, if not, then for damages as alleged. At the trial Mrs. Hallock obtained a verdict for $600 damages, and, the plaintiff having paid the money into court, together with the costs and disbursements then accrued, a judgment was rendered in its favor, condemning the lands and water rights as prayed for, from which the defendants appeal.

Ordinance No. 23 is made a part of the bill of exceptions, and provides, among other things, that H. V. Gates, his successors or assigns, is to furnish all labor and materials necessary to construct and install a plant in the City of Dallas for a system of waterworks, with circulating mains and reservoir pressure; that the water shall be supplied from Canyon Creek, or from any other source where water of equal quality can be obtained; that the contractor shall construct a masonry reservoir, with supply and waste pipes, furnish and lay the pipes, the length, dimensions, and quality being designated, and as much more as from time to time may be necessary to supply actual patrons; that the city shall provide sufficient ground for a reservoir site, the right of way thereto and therefrom, the right of way for all water mains, the right to use the water of Canyon Creek or other source of supply, and the right of way therefrom to the reservoir. It is further provided that, in consideration of the benefits to be derived from said plant, the city shall pay to the contractor $12,000, in two installments, the last to be when the plant is completed, at a cost to the contractor of not less than $20,000, exclusive of the rights of way, water, and water rights to be furnished by the city; that thereafter the plant shall be and remain the property of the city; that the contractor shall retain, as lessee, the use of said plant for the period of twenty years for a nominal consideration of one dollar per year, he to keep the same in repair and make such extensions as are necessary to meet the demand for water; that at the expiration of twenty years, or each succeeding period of five years thereafter, optional with the city, the value of the plant shall be determined in manner designated; that when it is so ascertained it shall be paid to the contractor, less the $12,000, the payment of which is first provided for, and that the city shall, after the acceptance of the contract, and its election to issue bonds, at once proceed to sell

as many thereof as will be necessary to procure the funds for the payment of the $12,000 stipulated to be paid on completion of the plant. Resolution No. 17 selects certain real property, rights of way, water, water courses, and riparian rights necessary to be used for the purpose of constructing, maintaining, and operating a system of waterworks in the City of Dallas, to be owned by it for the benefit of the city and its inhabitants, the same to be acquired by appropriation and condemnation through proper proceedings for the purpose, specifically describing them, and provides that the question whether the city shall acquire and make payment for and institute actions to condemn such property and rights so selected shall be submitted to a vote of the taxpayers of the city at an election to be held April 6, 1903, prescribing minutely the manner of holding such election. Resolution No. 19 authorizes and directs the appropriation and condemnation by proper actions of the property, rights of way, water, and water rights and privileges designated in Resolution No. 17, and the employment of an attorney to prosecute such actions.     AFFIRMED.

For appellants there was a brief over the names of *Butler & Coad*, *Sibley & Eakin*, and *W. H. & Webster Holmes*, with an oral argument by *Mr. William H. Holmes.*

For respondent there was a brief and an oral argument by *Mr. William T. Muir.*

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. It is first insisted that the City of Dallas is without competent authority to institute condemnatory proceedings of the nature here in progress, but it is quite apparent that section 51 of the charter, as amended in 1903 (Sp. Laws 1903, p. 671), confers ample power for the purpose.

2. It is next urged that the complaint does not state facts sufficient to constitute a cause of action, because (1)

it is not shown that the property and rights sought to be appropriated and condemned are necessary and convenient for the purposes contemplated ; (2) that the city is pro ceeding by resolution, and not by ordinance, as required by the charter ; and (3) that it is transcending its powers in leasing the plant, instead of operating the same upon its own account. Of these in their order.

It may be premised in this connection that a motion was interposed after verdict for judgment notwithstanding in favor of defendants for a dismissal of the action, which reserves the questions suggested for our consideration. Section 51 of the charter, among other things, authorizes and empowers the city to construct, operate, and maintain waterworks within or without its limits for the purpose of supplying the city and its inhabitants with water, and to charge tolls therefor, and to that end to purchase all real property, whether located within or without its limits, necessary for reservoirs, pumping stations, other buildings, and pipe lines, and all waters of lakes and streams and riparian rights necessary or convenient therefor, and, if unable to agree with the owner of any such property for the purchase thereof, to appropriate and condemn to its own use for the purposes aforesaid any and all such real property, waters, streams, and riparian rights ; the proceedings in such action to condemn to be the same as those provided by the laws of Oregon for the condemnation of lands for railway purposes ; and for the purposes indicated to issue interest-bearing negotiable coupon bonds, to the amount of $25,000, to run not more than twenty years, and to draw interest not to exceed the rate of five per cent per annum. Within the intendment of this section, the complaint should undoubtedly show by appropriate allegations that the property and rights sought to be condemned were necessary, or at least convenient, for

the construction, maintenance, and operation of water-works for the city's use and benefit.

The general rule applicable where it is sought to take lands or property of another and appropriate them to a public use or benefit is that the necessity therefor must not only be averred, but proved, and that it must further appear that the party seeking the appropriation has been unable to agree with the owner for the purchase thereof: 7 Ency. Pl. & Pr. 528; *Fork Ridge B. C. Assoc.* v. *Redd,* 33 W. Va. 262 (10 S. E. 405); *City of Helena* v. *Harvey,* 6 Mont. 114 (9 Pac. 903); *Portland & G. Tpk. Co.* v. *Bobb,* 88 Ky. 226 (10 S. W. 794). Whether a proposed use is in fact public, so as to justify the taking of private property without the consent of the owner, is a matter for judicial determination; but the question of the necessity, propriety, or expediency of appropriating such property to such an use, and the extent to which it shall be taken, rest wholly in legislative discretion, subject only to the restraint that just compensation must be made: *Bridal Veil Lum. Co.* v. *Johnson,* 30 Or. 205 (46 Pac. 790, 34 L. R. A. 368, 60 Am. St. Rep. 818); *Apex Transp. Co.* v. *Garbade,* 32 Or. 582 (62 L. R. A. 513, 52 Pac. 573); *Fanning* v. *Gilliland,* 37 Or. 369 (82 Am. St. Rep. 758, 61 Pac. 636, 62 Pac. 209); *Shoemaker* v. *United States,* 147 U. S. 282, 298 (13 Sup. Ct. 361); *Secombe* v. *Railroad Co.* 90 U. S. (23 Wall.) 108, 118.

3. When, therefore, the use is determined or admitted to be public, as it is here, and the legislature has declared that private property necessary or convenient to that use may be taken in furtherance of the enterprise, the power to take is complete. It then becomes a matter for the municipality or incorporation authorized to exercise the right of eminent domain to show by apt allegations and proofs the necessity or convenience for the appropriation of the property sought to be condemned to such an use. The complaint here is manifestly sufficient in that par-

ticular. The allegations bearing upon the subject may not be as direct as they might have been, but they show by all reasonable intendment that the property sought to be condemned is necessary for the use designated. It is suggested that it ought to have been alleged that the property was both necessary and convenient for the contemplated use; but this is not the mandate of the charter, and it is quite sufficient that it is shown to be necessary.

4. In this connection we will determine another question cognate thereto, which is pertinently presented by the attempt of the defendants to show under their second further and separate answer that it was more convenient and less expensive for the city to procure a supply of water from Ellendale Creek, which flows into La Creole Creek below the water power of Mrs. Hallock, instead of Canyon Creek, and therefore that the city ought not to be permitted to prosecute the present action to condemn; in other words, the objection goes to the necessity of the particular property for the use designed, not that it is excessive, thus conceding that some property was necessary thereto, but not that which it is here sought to have condemned. " But," says Mr. Lewis, " this objection is unavailing. Except as specially restricted by the legislature, those invested with the power of eminent domain for a public purpose can make their own location according to their own views of what is best or expedient, and this discretion cannot be controlled by the courts ": 2 Lewis, Em. Dom. (2 ed.) 891. Mr. Chief Justice DIXON indicates the reason for the rule, and states the consequences of the doctrine insisted upon here with convincing power in *Ford* v. *Chicago & N. W. R. Co.* 14 Wis. 609, 617 (80 Am. Dec. 791). He says: "So far as the judge placed his decision on the ground that there was no necessity of appropriating the street to the use of the railroad, because there were other adjoining lands which could be as conveniently occupied for that

purpose, he was clearly in error. The propriety of taking property for public use is not a judicial question, but one of political sovereignty, to be determined by the legislature, either directly or by delegating the power to public agents, proceeding in such manner and form as may be prescribed. * * Whether the company should appropriate this particular piece of land or that to the use of the road was, therefore, under their charter, a matter which was committed entirely to their discretion ; and the logic of the county judge, if good for anything, would be sufficient to defeat the company's location of the line of their road in ninety-nine cases out of every hundred, for in about that proportion of instances the land selected is not so indispensably necessary that some other might not be taken without very great inconvenience." So it is said in *St. Louis, I. M. & S. Ry. Co.* v. *Petty*, 57 Ark. 359, 369 (21 S. W. 884, 886, 20 L. R. A. 434): "Having determined that the side tracks are necessary for the conduct of the company's business, the location must be left to the company's discretion, unless there is a very clear abuse of it." See, also, *Rialto Irrig. Dist.* v. *Brandon*, 103 Cal. 384 (37 Pac. 484). The City of Dallas is empowered, under section 51 of its charter, to condemn property necessary for the use contemplated, and no limitations or restrictions are imposed confining its choice to any particular property. It has a discretion, within reasonable limits, as to the kind and capacity of the plant it may install, and so it has a discretion, within like limits, to choose the source of its water supply, the route of its pipe lines, and the location of its reservoirs and pumping stations, and, unless there is a clear abuse of it to the detriment of private individuals and property rights, the courts cannot interfere to control it.

5. The second point relates to the manner in which the city shall exercise the power to condemn. By section 27 of the charter the city is accorded power to do many things,

among which (subdivision 35) to provide the city with good and wholesome water for domestic, fire, and power purposes, and for the erection, construction, or purchase of such waterworks and reservoirs within or without the limits of the city as may be necessary or convenient therefor ; but the cost of the erection, construction, or purchase of such works is to be provided for in the manner prescribed in section 51. The same power is also granted by section 51, as amended, and, as we have seen, the costs attendant upon the purchase or construction of such waterworks may be provided for by the issuance of bonds of a kind therein designated. By section 28 it is provided that the power and authority granted by section 27 can only be exercised or enforced by ordinance, unless otherwise specified. By Resolution No. 17 the city attempted to make selection of the water and property rights it desired to appropriate, and by the same resolution it provided for submitting the question whether the city should acquire, institute actions to condemn, and make payment for such property and rights to the taxpayers for their determination. Now, the power conferred, within the purview of section 27, is to erect, construct, or purchase waterworks. Section 51, as amended, provides as well the means for procuring property necessary to that purpose in case a purchase cannot be had, and to that end confers the power to exercise the right of eminent domain. The two powers are manifestly distinct, the latter not being included in section 27, but only being conferred by section 51 as amended. The resolution was a step in the direction of an exercise of the latter power, looking to the condemnation of the property, and, although in aid of the construction and maintenance of waterworks, is not within the inhibition of proceeding otherwise than by ordinance. The resolution being adequate for the purpose, therefore, the second objection is unavailing. Section 51 originally

merely authorized the city to issue $25,000 interest-bearing bonds. The amendment confers additional powers, as we have seen, and limits the purpose for which they may be issued; but such powers as do not come within the purview of section 27 may as well be exercised by resolution as by ordinance.

6. The third reason assigned wherein the complaint is insufficient involves two objections. One proceeds upon the ground that the act of leasing the plant as contemplated by Ordinance No. 23 is *ultra vires*, and the other that the steps prescribed by the charter (Sp. Laws 1901, §§ 52-56) for issuing and disposing of the bonds for the purpose of raising the means with which to pay for the plant have not been taken, it being insisted that all of these provisions of the charter must be complied with before the city can lawfully acquire the requisite rights of way, water, and water rights and privileges necessary to the construction of such waterworks. The defendants do not claim to be residents or inhabitants of the city, or taxpayers therein, so as to question the regularity of the proceedings by which the city is attempting to procure the construction of the waterworks system, and the only matters in which they are concerned are the existence of the municipality as a corporation with power to exercise the right of eminent domain, the necessity for taking the property for the public use designated, and the injuries they will sustain by the taking. Whether the city intends leasing the plant when it has acquired it, or has not provided the ready funds with which to pay for its construction, cannot affect them in the least. The contract contemplates that the city shall own the system when completed, and the fact that the builder, as a part consideration for its construction, is to take as lessee the tolls for a term of years, cannot affect the right to construct, and for that purpose to acquire the easements necessary thereto; so that defendants cannot

complain or object to the exercise by the city of the right of eminent domain on that account. For a discussion of the principles here involved, see *State* v. *Newark*, 54 N. J. Law, 62 (23 Atl. 129).

7. The city is authorized and empowered to contract for the construction of a waterworks system, as well as to purchase, and it is not necessary that it provide at once for meeting the payments contemplated. This it can do at another time. But if it should be required to provide immediately for such payments, it is difficult to understand how it could affect these defendants. The contractor might insist upon it, but why is it necessary that it should be done that the city might exercise the right of eminent domain in securing the rights of way for pipe lines, water, and water rights and privileges requisite to the construction of the system? It is neither expressly nor impliedly made a condition precedent thereto, nor do we think that a reasonable interpretation *in pari materia* of all the sections of the charter bearing upon the subject requires, that the whole should be provided for at one and the same time, and especially does it not require that the bonds shall be issued and disposed of and the money actually in hand before the city can exercise the right accorded it to acquire the property and privileges necessary to the initiation of the work of construction.

It is said in argument that the city has no authority to pay the money necessary to the appropriation out of the general fund, and that the sale of the bonds is the exclusive source from which it could be derived. Grant it. The defendants, not being taxpayers or residents within the city, cannot be affected thereby, and their demands are subserved when the money is paid into court for them. Where it comes from—whether from one fund or another, or whether paid by the city or a stranger—cannot affect

44 OR.——17

them injuriously. It is no defense to condemnation proceedings begun by a city for such purpose that the general fund is insufficient to defray the current expenses of the city, because it is said the landowner is not concerned in the city's ability to pay, as he is not required to give credit: *In re Application of Cedar Rapids,* 85 Iowa, 39, 43 (51 N. W. 1142). So it is here. The defendants are not concerned in the source from which they are to receive their compensation. It is enough that it has been actually provided for them, and is ready for their acceptance: *Secombe* v. *Railroad Co.* 90 U. S. (23 Wall.) 108, 118.

8. Another argument we will notice in passing is that the city should have proceeded in its condemnatory proceedings under the general laws (B. & C. Comp. § 5108), and submitted the question of whether it would institute the action to condemn and make payment for the property involved to a vote of the taxpayers. We think, however, this is not required, as the charter has authorized the condemnatory proceedings, and prescribes only that the proceedings in such action to condemn shall be the same as those provided by the general laws for condemnation for railway purposes. But, if it be conceded that counsel's contention is correct that the question alluded to should have been submitted to a vote of the taxpayers, it may be answered that that is just what Resolution No. 17 provided for.

There was another question presented, relative to the time of taking effect of the act of the legislature amending section 51 of the city charter, in view of the emergency clause adopted with it; but it is fully settled and determined by the late case of *Kadderly* v. *Portland,* 44 Or. 118 (74 Pac. 710). These considerations affirm the judgment of the trial court, and such will be the order here.

AFFIRMED.