SHASTA POWER CO. v. WALKER et al.

(Circuit Court, N. D. California. December 12, 1906.)

No. 13,895.

**1. EMINENT DOMAIN—PUBLIC USE—DETERMINATION.**

While the question whether a proposed use for which property is sought to be condemned is in fact public or not is for the determination of the courts, the necessity for the taking, the instrumentalities by which it may be done, and the mode of procedure are matters resting wholly within the province and discretion of the Legislature.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 165–167.]

**2. SAME—PRIVATE CORPORATIONS—RIGHTS—INTEREST TO PUBLIC.**

To entitle a private corporation to exercise the right of eminent domain, the use for which the property is desired must be such as will subserve the public in the sense that they shall have the right to demand the service of the corporation as of right, and not merely in accordance with the latter's will and pleasure.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 51, 54.]

**3. SAME—COMPLAINT.**

Where a complaint in a proceeding by a private corporation to condemn land for a water ditch alleged that plaintiff had acquired a franchise from the city of R. and the county of S. to serve the inhabitants of such municipality with light, heat, and power, and to generate, transmit, and sell electricity for such purpose to the public in general, and that for this purpose it was necessary to conduct water from a certain creek, through ditches, flumes, and pipe lines, over the property sought to be condemned, to its power house, for use in operating its machinery, etc., the complaint sufficiently showed that plaintiff was a public service corporation, and that the use of the property desired was a public use.

Braynard & Kimball and Samuel M. Shortridge, for plaintiff.

A. E. Bolton and Reed & Dozier, for defendants.

WOLVERTON, District Judge. The question presented for determination here arises upon demurrer to the complaint, challenging the right of plaintiff to condemn certain lands of the defendant Walker for its use; the contention of defendant being that it is not made to appear that the use to which it is sought to devote the property is in fact a public use. It is alleged that the purpose of the plaintiff corporation is to generate, transmit, and furnish electricity and electric current to the public in general, and to all inhabitants and persons within the county of Shasta and elsewhere, in the state of California, for the necessary public use of light, power, and heat; that, to enable plaintiff to perform its functions in this respect, it is necessary to conduct water from Bear creek a long distance, by means of ditches, flumes, and pipe lines, to its power house for use in operating machinery for generating and transmitting electricity and electric current designed for supplying mines, quarries, railroads, tramways, mills, and factories in said county of Shasta and elsewhere in the state, not owned by plaintiff, also for supplying light, heat, and power to villages, towns, and incorporated cities in the county of Shasta and elsewhere, in California, and to the inhabitants thereof; that prior to the commencement of this action plaintiff was, and now is, the owner,

and entitled to the use and enjoyment of the right, privilege, and franchise to erect poles and string wires thereon for the transmission of electricity and electric current for power, light, and other necessary and useful purposes along and upon the roads, bridges, and highways of the county of Shasta for the period of 50 years, and also over, along, and upon the streets, alleys, and avenues of the city of Redding, in the county of Shasta, for a like period, all of which rights and privileges were regularly granted by the authorized boards of supervisors and trustees of the county and city; that the purpose and object of plaintiff is to supply, by means of electricity and electric current to be generated as aforesaid, the public needs in the city of Redding and the county of Shasta and elsewhere, in the state of California, for light, heat, and power, and that it will be impracticable for plaintiff to utilize the water of Bear creek for the purposes indicated, except by conducting the same, by means of a ditch, along plaintiff's surveyed and established ditch line, and over and across said lands of the defendant Walker; that a large proportion of the inhabitants, citizens, and residents within the county of Shasta and elsewhere, in the state of California, are not supplied with electricity or electric current for heat, light, or power, and the supplying of such electricity and electric current for the purposes designated is, and was at all the times mentioned, a public necessity. The ordinary prayer follows that the lands be condemned for plaintiff's use. The purpose of plaintiff, from a reading of the complaint, is plain. It is to show that the use for which condemnation is sought is public in character, and such as gives warrant to the proceeding to subject the property in question thereto.

The California Constitution contains the usual provision that "private property shall not be taken for public use without just compensation." In view of the restriction, the Legislature has adopted a regulation as follows:

"Any person may, without further legislative action, acquire private property for any use specified in section 1238 of the Code of Civil Procedure either by consent of the owner or by proceedings had under the provisions of title VII, part III, of the Code of Civil Procedure; and any person seeking to acquire property for any of the uses mentioned in such title is 'an agent of the state,' or a 'person in charge of such use,' within the meaning of those terms as used in such title." Section 1001, Civ. Code, Cal.

The provisions in title 7, part 3, relate to the exercise of eminent domain, and define the manner of such exercise. "Eminent domain" is defined to be "the right of the people or government to take private property for public use." Section 1237 Code Civ. Proc., which is within the title above designated. The next following section (1238) provides that:

"Subject to the provisions of this title, the right of eminent domain may be exercised in behalf of the following public uses: * * * 12. Canals, reservoirs, dams, ditches, flumes, aqueducts, and pipes for supplying and storing water for the operation of machinery for the purpose of generating and transmitting electricity for the supplying of mines, quarries, railroads, tramways, mills and factories with electrical power, and also for the supplying electricity to light or heat mines, quarries, mills, factories, incorporated cities, cities and counties, villages or towns, together with lands, buildings and all other improvements in or upon which to erect, install, place, use, or operate

machinery·for the purpose of generating and transmitting.electricity for any of the·purposes or uses above set forth."

These statutes would seem to confer the very power that the plaintiff seeks to exercise by invoking the right of eminent domain; and, such being the case, the constitutionality thereof is drawn in question, although the point does not appear to be expressly made by counsel. The point is specifically made, however, that the use sought to be exercised is a private and not a public use, and not such in character, therefore, as gives authority to invoke the right of eminent domain. It is the consensus of judicial opinion everywhere that the question whether the use is in fact public or not, so as to justify its taking without the consent of the owner, is one which the courts alone may determine. On the other hand, however, it is just as well settled that the necessity or expediency for the taking, the instrumentalities by which it may be done, and the mode of procedure to be observed are matters resting wholly within the province and discretion of the legislative department. Secombe v. Railroad Company, 23 Wall. 108, 23 L. Ed. 67; Shoemaker v. United States, 147 U. S. 282, 13 Sup. Ct. 361, 37 L. Ed. 170; The Dalles Lumbering Company v. Urquhart, 16 Or. 67, 19 Pac. 78; Bridal Veil Lumbering Co. v. Johnson, 30 Or. 205, 46 Pac. 790, 34 L. R. A. 368, 60 Am. St. Rep. 835; Apex Transportation Co. v. Garbade, 32 Or. 582, 52 Pac. 573, 54 Pac. 367, 882, 62 L. R. A. 513; Fanning v. Gilliland, 37 Or. 369, 61 Pac. 636, 62 Pac. 209, 82 Am. St. Rep. 758; Dallas v. Hallock, 44 Or. 246, 75 Pac. 204; County of San Mateo v. Coburn, 130 Cal. 631, 63 Pac. 78, 621; Board of Health v. Van Hoesen, 87 Mich. 533, 49 N. W. 894, 14 L. R. A. 114; Matter of Niagara Falls & Whirlpool R. Co., 108 N. Y. 375, 15 N. E. 429; Matter of S. R. C. R. Co., 128 N. Y. 408, 28 N. E. 506. It is the general doctrine that, if it be doubtful whether legislation is within or inimical to the constitution, the courts should resolve the doubt by sustaining the lawmaking body. As pertaining to the inquiry, under conditions similar to those attending the case at bar, the Supreme Court of California has made pertinent application of the general rule. In Lux v. Haggin, 69 Cal. 255, 303, 10 Pac. 674, 699, it says:

"It is the rule that, where there is any doubt whether the use to which the property is proposed to be devoted is of a public or private character, it is a matter to be determined by the Legislature; and the courts will not undertake to disturb its judgment in that regard. S. V. R. Co. v. Stockton, 41 Cal. 147. To this yielding to the legislative judgment there is but one exception; that is, when the property of the citizen is taken, or sought to be taken, for a use in no sense public, or, in the language of Chancellor Walworth (Varick v. Smith, 5 Paige [N. Y.] 159), 'where there is no foundation for a pretense that the public is to be benefited thereby.' Con. Chan. Co. v. C. P. R. Co., 51 Cal. 269."

So, in Re Madera Irrigation District, 92 Cal. 296, 309, 28 Pac. 272, 274 (14 L. R. A. 755, 27 Am. St. Rep. 106):

"If the subject-matter of the legislation be of such a nature that there is any doubt of its character, or if by any possibility the legislation may be for the welfare of the public, the will of the Legislature must prevail over the doubts of the court."

See, also, Lindsay Irrigation Company v. Mehrtens, 97 Cal. 676, 32 Pac. 802.

The language of the cases above quoted is somewhat modified in County of San Mateo v. Coburn, supra; but whether it was intended to modify the doctrine is not apparent. The Supreme Court of California has spoken also with reference to the question of public use. It says:

"The words 'public use' here mean [referring to the Constitution] a use which concerns the whole community, as distinguished from a particular individual or a particular number of individuals. It is not necessary, however, that each and every individual member of society should have the same degree of interest in this use, or be personally or directly affected by it, in order to make it public. * * * If the use for which the property is taken be to satisfy a great public want or public exigency, it is a public use. * * * It may be a use in which but a small portion of the public will be directly benefited, * * * though it must be of such a character as that the general public may, if they choose, avail themselves of it." Gilmer v. Lime Point, 18 Cal. 229, 251–253.

These utterances have the especial sanction of other courts. In Board of Health v. Van Hoesen, supra, the court says:

"To justify the condemnation of lands for a private corporation, not only must the purpose be one in which the public has an interest, but the state must have a voice in the manner in which the public may avail itself of that use. In Gilmer v. Lime Point, 18 Cal. 229, a 'public use' is defined to be a use which concerns the whole community, as distinguished from a particular individual. The use which the public is to have of such property must be fixed and definite. The general public must have a right to a certain definite use of the private property, on terms and for charges fixed by law, and the owner of the property must be compelled by law to permit the general public to enjoy it. It will not suffice that the general prosperity of the community is promoted by the taking of private property from the owner, and transferring its title and control to a corporation, to be used by such corporation as its private property, uncontrolled by law as to its use. In other words, a use is private so long as the land is to remain under private ownership and control, and no right to its use, or to direct its management, is conferred upon the public."

So it is said in Gaylord v. Sanitary District of Chicago (Ill.) 68 N. E. 522, 63 L. R. A. 582:

"It is also the settled doctrine of this court that, to constitute a public use, something more than a mere benefit to the public must flow from the contemplated improvement. The public must be to some extent entitled to use or enjoy the property, not as a mere favor or by permission of the owner, but by right."

So, also, in Sholl v. German Coal Company (Ill.) 10 N. E. 199, 59 Am. Rep. 379:

"If, from the nature of the business, and the way in which it is to be conducted, it is clear no obligations will be assumed to the public, or liability incurred, other than such as pertains to all strictly private enterprises, it may safely be concluded the use is private, and not public. It is also believed to be generally, if not universally, true that benefits resulting from a public use capable of individual appropriation are open to all alike upon the same terms and conditions."

And again, by a footnote to section 165, Lewis on Eminent Domain:

"The test whether a use is public or not is whether a public trust is imposed upon the property, whether the public has a legal right to the use, which cannot be gainsaid or denied or withdrawn by the owner."

See, also, Fallsburg, etc., Co. v. Alexander, 101 Va. 98, 43 S. E. 194, 61 L. R. A. 129, 99 Am. St. Rep. 855, and State ex rel. Tacoma

Industrial Co. v. White River Power Co. (Wash.) 82 Pac. 150, 2 L. R. A. (N. S.) 842.

So it would appear from the cases that, in order to entitle a private corporation to exercise the exceptional right of eminent domain, the use which forms the basis of its application therefor must be such as will subserve the public in some appreciable way, such as it might demand in service as of right, and not merely such as may be bestowed at the will and pleasure, much. less at the whim and caprice, of the corporation. It is not sufficient that the contemplated improvement will operate as a benefit to the community, or the people or property holders thereof, by increasing property valuations, or affording facilities for availing themselves of the service that the corporation proposes to supply or afford; for this is altogether foreign to the idea. But the service proposed must be such as every individual member of the community, similarly situated, shall have the right to demand and receive upon like conditions as any other member, whether the corporation would accede to the bidding or not. The community might be large or small, or the service might be limited to a few, or extended to many; but within the compass of the proposed service every individual similarly situated should be entitled to it as of right upon like conditions; otherwise it is hardly conceivable how such an institution could be considered a public service corporation. If it may serve whom it pleases and deny whom it pleases, although those it accommodates may be a part of the general public, the service becomes of private consequence merely, and the real public is ignored. So that, unless all may, under like and similar conditions and circumstances, demand and receive as of right, it is not a public, but a private service. The case of Strickley v. Highland Boy Mining Co., 200 U. S. 527, 26 Sup. Ct. 301, 50 L. Ed. 581, like the one it cites (Clark v. Nash, 198 U. S. 361, 25 Sup. Ct. 671, 49 L. Ed. 1085), is based upon exceptional conditions, and is without application here.

Now, it must be supposed that the Legislature of California in passing the statutes above set out had in contemplation a use of the nature thus defined, and, so interpreted, they are within the fundamental law. Taking the allegations of the complaint as a whole into consideration, and being mindful that the plaintiff has acquired franchises from the city of Redding and from the county of Shasta for the purpose of serving the inhabitants of both such municipalities with light, heat, and power, I am of the opinion that the plaintiff is shown to be a public service corporation, and hence that the complaint is within itself sufficient. The objection that the contemplated use is vague, indefinite, and uncertain cannot be maintained.

If, notwithstanding what has been said, it can be shown by extrinsic evidence, under issues properly formulated, that the end sought to be accomplished is not of a public character, but is solely for private purposes, the condemnation should be denied as being in excess of legislative power. County of San Mateo v. Coburn, supra. But this is matter for further controversy not arising under the complaint.

It follows, therefore, that the demurrer should be overruled, and it is so ordered.