Argued March 10, affirmed April 14, 1954

STATE HIGHWAY COMMISSION v. PACIFIC
SHORE LAND CO. AND ANDERSEN ET AL.

269 P. 2d 512

*Ralph Wyckoff,* of Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General, of Salem; C. W. Enfield, Assistant Attorney General, of Salem; and Leonard I. Lindas, of Oregon City.

*David M. Spiegel* argued the cause for respondent. On the brief were Lenske, Spiegel, Spiegel, Martindale & Lezak, of Portland.

Before Latourette, Chief Justice, and Warner, Tooze and Perry, Justices.

TOOZE, J.

This is a condemnation action brought by the state of Oregon through its Highway Commission, as plaintiff, against Pacific Shore Land Co., a corporation, Maurice Andersen, Edward Bennett, and Lincoln county, a political subdivision of the state of Oregon, as defendants, to condemn for highway purposes cer-

tain lands owned by defendants in Lincoln county. All defendants, except defendant Pacific Shore Land Co., defaulted, their default being duly entered of record. Judgment was entered in favor of defendant Pacific Shore Land Co.; plaintiff appeals therefrom.

In its complaint plaintiff particularly described two parcels of land owned by defendant, designating them as Parcel No. 1 and Parcel No. 2, and prayed for the condemnation thereof. Upon a preliminary hearing before the court, at which evidence was introduced, the question of the necessity for the acquisition of Parcel No. 2 was considered, and under date of May 26, 1952, the court entered the following order:

"It is further Ordered and Adjudged that the necessity for the acquisition of the said Parcel Number 2, as described in the plaintiff's complaint, has not been shown and that the said resolution of the State Highway Commission is not sufficient to authorize the acquisition of the said Parcel Number 2, and that the plaintiff is without authority under the pleadings and the resolution to proceed with the acquisition or condemnation of the said Parcel Number 2, and that the issue relative to the taking of the said Parcel Number 2 be, and hereby is, withdrawn from any further proceedings herein."

Thereafter the trial proceeded before court and jury as to Parcel Number 1. Based upon the jury's verdict, judgment was entered in favor of defendant for the sum of $5,000, with interest, together with the additional sum of $1,000 as a reasonable attorney's fee, and costs and disbursements. By this final judgment, Parcel No. 1 was condemned, and plaintiff's complaint was dismissed as to Parcel No. 2.

On February 25, 1946, the Highway Commission adopted a resolution referring to 12 separate tracts

of land owned by the several persons particularly named therein. Designated among these tracts of land as Parcel No. 12 is the description of a single unit of land comprising 26.88 acres owned by defendant. The resolution specifically declared the necessity and purpose of the acquisition of defendant's land to be for "right of way" purposes in connection with the relocation of a portion of the Oregon coast highway in Lincoln county.

On March 23, 1946, the complaint in this action was filed, with the said resolution attached as an exhibit and made a part of the complaint. However, the land sought by the complaint consisted of two separate parcels of approximately 9 acres each, one particularly described and designated as Parcel No. 1, and the other described and designated as Parcel No. 2, as before noted. From the particular descriptions of these separate parcels, they may be identified as parts of the total acreage set forth in the resolution.

In its brief plaintiff states:

"The issue presented by this appeal is whether it was proper for the Trial Court to segregate 8.7 acres [Parcel No. 2] of the total 17.65 acres sought and dismiss such portion of plaintiff's complaint as might pertain to these 8.7 acres."

It should be stated that the hearing before the trial court upon the necessity and propriety of the acquisition of Parcel No. 2 was held pursuant to the agreement of the parties, and without intervention of a jury.

Before discussing the merits of this controversy, we will dispose of plaintiff's contention that defendant's answer fails to state facts sufficient to constitute a defense. Without going into details, we simply state

our conclusion that the answer contains denials and affirmative allegations which present issuable facts; the affirmative allegations are much more than mere conclusions. They are sufficient to present the legal and factual questions that must be determined in this case. Our conclusion does not in any way conflict with the well-reasoned opinion in *City of Eugene v. Johnson*, 183 Or 421, 192 P2d 251. We pass this contention of plaintiff without further comment.

As point II under its assignment of error that the trial court erred in dismissing a portion of plaintiff's complaint, plaintiff states:

"Assuming the question of necessity to have been raised there is no evidence to support a finding that the State Highway Commission was guilty of bad faith or abused its discretion."

This contention requires an examination of the record in the case. Upon the hearing before the trial court, the resolution adopted by the Highway Commission was first offered in evidence. The parts of that resolution which are material to our discussion are:

"1. That the Commission does hereby find and declare that the parcels of real property hereinafter described are each necessary for the accomplishment of the purposes hereinafter expressly and specifically set forth, which said real properties and the specific purposes for which the same are being acquired are described as follows, to wit:

" *   *   *   *   * [Each parcel of land is then separately described, with the name of the owner; and with the exception of the first three tracts described, each description is followed by the words: "which property is being acquired for right of way purposes in connection with the Oregon Coast Highway." The first two properties described are required for right of way purposes in connection

with the Tiller-Trail Highway. At the end of the description of the third property described is this statement: "which property is being acquired for the purpose of securing roadbuilding materials therefrom in connection with the Tiller-Trail highway".]

"That the Commission does hereby find and declare that each of the said described parcels of real property is necessary and acquisition of the same by the State is required for the specific purposes hereinabove set forth, and the said properties are being acquired for the express and specific purposes in this resolution set forth."

Plaintiff also introduced in evidence a highway map drawn to scale and covering the lands owned by defendant. This is an official map prepared for the Highway Commission. The "right of way" for the Oregon coast highway is clearly outlined on the map, the center line being delineated, and the land on each side thereof within the right of way being plainly marked. The map also designates the land owned by defendant and within the right of way as "Parcel No. 1—8.95 ac." It further shows the location of Parcel No. 2—8.70 acres. On the east, Parcel No. 2 adjoins the west boundary line of the marked right of way, but it is not within the right of way.

Defendant introduced in evidence another highway map procured from the Highway Commission, which latter map covered the same lands shown in the other map above described. This map also contains the designations "Parcel 1—8.95 ac. and Parcel 2—8.70 ac." However, on that part of the map showing Parcel 2 appears the following statement: "Parking and Picnic Area."

Plaintiff called B. A. Martin, assistant chief locating engineer of the Highway Commission, as a wit-

ness. Martin had run a preliminary line for this highway in 1936, but he had nothing whatever to do with the final laying out and construction of the road. Over objection, the witness was permitted to testify on direct examination as follows:

"Q Mr. Martin, you're familiar with what has been designated as Parcel 2?
"A I am, yes.

"Q In your opinion, is Parcel 2 necessary for right of way purposes by the state of Oregon?
"A It is.

"*  *  *  *  *

"Q Why, in your opinion, Mr. Martin, is that tract of land which is designated as Parcel 2 necessary for right of way purposes?

"A For drainage is the most important part of it. To my estimation that country and the line through there is a very broken bad piece of ground full of lakes, sliding. Before anything was ever done to it, before we ever went in there with the highway, the ground was breaking down, it wouldn't stand up of its own weight. It was necessary to put in drainage in order to try to stabilize the ground, the surrounding terrain. I couldn't say as to what ditches or subdrainage has been done with it because I wasn't on the construction, but at the time it was to provide for these underground drainages and protect our existing highway from any chance of changing the topography or the terrain after the highway was built, which would affect the highway. I think that we have effected the terrain on both sides of the highway with this new highway that we built.

"Q Then, as I understand your testimony, Mr. Martin, when you located this highway or you formed your opinion as to its necessity, you hadn't in mind no set drainage plan?

"A Oh, very definitely we had a set drainage plan at the time it was located, and I think that

all of the old, my old, records on it will show very definitely the ditches and the subdrainage that was intended to be used at this location. I'm saying that I don't know whether they followed my plan or not because I wasn't on the construction of it, I don't know. * * *."

Upon cross-examination, the witness testified:

"Q Well, Mr. Martin, this land then that we are speaking about, Parcel 2, lies next to the highway as it was finally located?

"A Yes."

The effect of Martin's testimony is to establish the proposition that Parcel No. 2 was not necessary, and was not to be used, as a part of the right of way for the highway, but was only necessary and to be used for drainage purposes. The evidence disclosed that but little use was actually being made of it, even for drainage purposes.

Based upon the foregoing record, the trial court reached the conclusion hereinbefore stated.

The Oregon State Highway Commission is a quasi-public corporation, an agency of the state. It was created by the legislature to carry out purely state functions; that is, the location, relocation, construction, maintenance, and repair of state highways and bridges. §§ 100-101 to 100-1104, incl., OCLA (ORS Title 31, ch 366).

The Highway Commission is vested with broad powers. As to its specific powers, § 100-115, OCLA, provides in part, as follows:

"In addition to such general powers as may be necessary and incident to the performance of its duties under the provisions of this act the commission hereby is given specific power and authority to do and accomplish the following things:

"* * * * *

"(4) Acquisition of property for right of way. Acquire by purchase, agreement, donation, or by the exercise of the power of eminent domain, real property and/or any right or interest therein necessary or deemed necessary for rights of way, either for original location or for widening, straightening, or otherwise changing already established highways. The commission may when acquiring real property for right of way acquire all right of access from abutting property to the highway to be constructed, relocated or widened on such right of way.

"(5) Acquisition of real property generally. Acquire by purchase * * * or by the exercise of the power of eminent domain real property, or any right or interest therein, necessary or deemed necessary for the construction of shops * * * or for appropriation, acquisition or manufacture of roadbuilding materials, approach or hauling roads, *highway drainage, drainage tunnels,* or for the maintenance of an unobstructed view of any state highway * * *, or for any other use or purpose necessary or deemed necessary for carrying out the purposes of this act.

"(6) Acquisition of scenic places. Acquire by purchase * * * or by the exercise of the power of eminent domain real property * * * necessary or deemed necessary for * * * the preservation of scenic places, * * * also land and ground necessary for the development and maintenance of *parks, parking places,* auto camps, camp sites, roadside development, recreational grounds, * * * and which will contribute to the general welfare and pleasure of the motoring public or road user.

"* * * * *

"(12) Widths of rights of way. Determine the widths of rights of way for any and all state highways." (Italics ours.)

By the provisions of § 100-115e, OCLA, the Commission is given power to construct trails and bridle

paths connecting legally established streets and roads and public parks with the shore of the Pacific ocean, and to acquire the necessary real property therefor by the exercise of the power of eminent domain. Under the provisions of § 100-115g, OCLA, the Commission is further empowered to construct sidewalks, footpaths, bicycle paths or trails for horseback riding "within the right of way of any state highway or section thereof". The statute specifically provides that before the construction of any of said facilities, the Commission must find and declare that the construction thereof is necessary and in the public interest.

It will be observed that in the enumeration of the specific powers granted the Commission under § 100-115, OCLA, and its separate subdivisions as noted, the several purposes, to accomplish which the power is granted, are treated separately as distinct objectives. The Commission is given the power (among other specific powers) to acquire land for (1) rights of way; (2) for highway drainage and drainage tunnels; and (3) for trails, bridle paths, etc.

From a consideration of the statute as a whole, it is manifest that the term "right of way" as used is intended to have its usual and ordinary meaning. The term has a specific legal definition. At common law it was the defined passageway created by the easement right to pass over the land of another. In Black's Law Dictionary 4th ed, "Right of Way" is defined as follows:

> "The right of passage or of way is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, or horseback, or in a vehicle, to drive beasts of burden or carts, through the estate of another. * * *."

In *Almada v. Superior Court, etc.,* 149 P2d 61, 64, it is said:

"Webster's New International Dictionary defines a right of way as 'a right of passage over another person's land'. And this definition has been so universally incorporated into innumerable decisions that it may be said to be generally accepted. Sometimes it is a right of way for a road, sometimes for a ditch, sometimes for a canal, but whatever the particular right of way may be for, it is a right of passage over another person's land, or, in other words, an easement to use the land of another for such particular purpose."

Ordinarily the right to travel across the lands of another is an easement only, title to the land itself remaining in the owner of the fee. However, under our statute, the Commission is empowered to acquire the fee simple title to the land necessary for the right of way, as well as for other purposes.

Under the statute, the power given the Commission to acquire real property for rights of way simply means the power to acquire the property deemed necessary for the construction of a highway for the use of vehicular and other travel. The width of the right of way to be acquired is not necessarily confined to the actual width of the traveled portion of the road constructed or to be constructed. Enough land for parallel shoulders, ditches, and anticipated needs of the future may be condemned as a part of such right of way. That clearly is the purpose of subd. 12 of § 100-115, OCLA, supra, which gives the Commission the power to determine the widths of "rights of way for any and all state highways". Along the stretch of highway involved in this litigation, the Commission fixed the width of the right of way at approximately

200 feet, although its map shows some variations in width at different points.

Authority to commence and prosecute an action for condemnation of necessary lands is given the Commission by § 100-116, OCLA, under conditions therein prescribed. The statute, in part, provides:

"Whenever in the judgment of the state highway commission it is necessary to acquire real property *for any of the purposes* for which the state highway commission is authorized by law to acquire real property, the state highway commission, *after first declaring by resolution that said real property is necessary and the purpose for which said real property is required,* to attempt to agree with the owner * * *, and if said commission is unable to agree with the said owner * * *, or if, after diligent search, the commission is unable to find the said owner * * *, *said commission hereby is authorized to commence and prosecute to a final determination any necessary or appropriate suit or action* * * * *for the condemnation of such interests* * * *.

"The resolution of the state highway commission shall be conclusive evidence (a) of the public necessity of such proposed public improvement or project; (b) that such real property, or interest therein, is necessary therefor; and (c) that such proposed public improvement or project is planned or located in a manner which will be most compatible with the greatest public good and the least private injury." (Italics ours.)

■■ In *City of Eugene v. Johnson,* supra, at page 426, Mr. Justice BAILEY, speaking for the court, said:

"* * * Whether a proposed use is a public one is a matter for judicial determination. State ex rel. v. Hawk, 105 Or. 319, 208 P. 709; Dallas v. Hallock, 44 Or. 246, 75 P. 204. The amount of compensation to be paid for the property taken is,

also, a judicial matter. But the necessity, propriety, or expediency of appropriating property for public use, the amount and location of the property to be taken, and its suitableness for the proposed use are all political or legislative questions. And the determination of those matters by a grantee of the power of eminent domain is, in the absence of fraud, bad faith *or abuse of discretion,* final and not subject to review by the courts." (Italics ours.)

Also see 1 Nichols 373, Eminent Domain, § 4.11.

Insofar as the State Highway Commission is concerned, the rule above stated is given added force by the express provisions of § 100-116, OCLA, supra.

■ In *Dallas v. Hallock,* 44 Or. 246, 252, 75 P 204, Mr. Justice WOLVERTON stated:

"The general rule applicable where it is sought to take lands or property of another and appropriate them to a public use or benefit is that the necessity therefor must not only be averred, but proved, * * *."

Substantially the same statement is to be found in *State ex rel. v. Hawk et al.,* 105 Or 319, 208 P 709. However, the introduction in evidence of the resolution as adopted establishes a prima facie case of the necessity for taking an entire tract. *City of Eugene v. Johnson,* supra. In the instant litigation plaintiff did not rest upon the prima facie case established by the resolution. It offered other evidence (defendant offered none) that obviously contradicted and overcame the declaration of the resolution that all the land described as owned by defendant was necessary for "right of way" purposes.

■ In *City of Eugene v. Johnson,* supra, at page 428, the following rule is announced:

"The necessity for the taking of property is a question of law for the court and not one of fact

to be decided by the jury, and, if it is made an issue, it should be settled by the court before the jury is impaneled.''

That rule was followed in the instant case.

■ As above noted, *City of Eugene v. Johnson,* supra, lays down the definite rule that the courts may inquire into the determination of the grantee of the power of eminent domain if there has been an abuse of discretion. And so in this case, if there has been an abuse of discretion on the part of the Highway Commission, we not only have the authority, but it also is our duty, so to declare. No question of wrongful intent or fraud on the part of the Commission is involved. This court has had occasion to fully consider what is meant by ''discretion'' and ''abuse of discretion''. *Casciato v. Oregon Liquor Control Com.,* 181 Or 707, 715, 185 P2d 246. We need not repeat that discussion.

■ From the plain wording of the first paragraph of § 100-116, OCLA, supra, under which condemnation proceedings are provided for, it is manifest that a condition precedent to the vesting and exercise of such authority is the adoption by the Highway Commission of a resolution declaring not only the *necessity* for the appropriation, but also the *purpose* for which the land is to be acquired. Declaring the *purpose* is of equal importance to declaring the *necessity.*

■ The State Highway Commission is a creature of statutory origin; it has only such special and limited powers as are given it by the statute. In *United Contracting Co. v. Duby,* 134 Or 1, 29, 292 P 309, Mr. Justice Rossman, speaking for the court, said:

''* * * The authority of the highway commission is purely statutory; one of our recent decisions

referred to the commission as 'a board of special and limited powers': State v. U.S.F. & G. Co., 125 Or. 13 (265 P. 775).''

In 2 Lewis 917, Eminent Domain 3d ed, § 508, it is stated:

"Since the statutory authority to take private property for public use must be strictly pursued, whatever is required by way of preliminaries must be complied with."

From 18 Am Jur 957, Eminent Domain, § 312, we quote the following:

"As we have already seen, the extent to which the power of eminent domain may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained. Where, therefore, the state, a municipality, or other agent in charge of a public use, seeks to acquire, against the consent of the owner, private property for public use, *the provisions of the authorizing law must be strictly complied with,* and this must appear on the face of the proceedings for taking the land. *The owner* of the property sought to be taken *has a right to be heard* in an appropriate tribunal *upon the question whether authority is being duly exercised in taking his property.*'' (Italics ours.)

Also see 29 CJS 880, Eminent Domain, § 89.

In *Latourette v. County Court,* 121 Or 323, 330, 255 P 330, we said:

"* * * While we adhere to the former decisions of this court requiring strict compliance with the statute in road matters, yet where jurisdiction has attached by proper petitions or the adoption of the proper resolution and the required notice is given, mere irregularities will not be sufficient to reverse the order of the County Court establishing a road, unless it clearly appears from

the record that grave injustice has been done to an interested party; [Citing cases].

"* * * * * *

"* * * * Strict compliance should always be made with the statute in road matters.* It should ever be kept in mind that the laying out of a road over private property is taking that property against the will of the owner and that *it cannot be taken even by the state, except by strictly pursuing the procedure prescribed by statute for that purpose.*" (Italics ours.)

As we have seen, it is mandatory under the statute that the resolution adopted by the Highway Commission state the *purpose* for which the land is to be acquired. That is one of the conditions of its right to condemn.

■ The resolution, adopted approximately one month prior to the commencement of this condemnation proceeding, declares that 26.88 acres of defendant's property is being acquired for "right of way purposes". In the complaint approximately 19 acres only of the 26.88 acres are described. In other words condemnation and appropriation are not sought as to approximately 8 acres of the total acreage described in the resolution. It is assumed, therefore, that this tract of 8 acres was not necessary for "right of way purposes", although the resolution declared that it was.

Moreover, on its map and in its complaint, the plaintiff designated and treated the remaining 19 acres as comprising two separate and distinct tracts of land—not as a single tract. As before observed, Tract No. 1, as so designated, constitutes the land used for "right of way purposes". Tract No. 2 lies entirely outside the "right of way", although adjacent thereto. The evidence introduced by plaintiff shows conclusively

that Tract No. 2 is not necessary for "right of way purposes", though it might have been necessary for "drainage purposes", or for "parks, parking places, auto camps, camp sites, roadside development, recreational grounds", etc. The land in question lies between the highway and the shores of the Pacific ocean.

The resolution itself recognizes the necessity of stating the particular purpose for which the land is actually to be acquired. We refer to the third property described in the resolution, owned by William Bohn and wife. The particular purpose specified for which that tract of land was to be acquired is "securing roadbuilding materials therefrom", also a separate and distinct purpose set forth in the statute for which land might be condemned by plaintiff.

Because Tract No. 2 is not embraced within the right of way as established by plaintiff, and upon which the highway was constructed, it follows that the resolution does not in fact declare for what purpose or necessity, if any, it is being acquired. It it manifest that use of land for "drainage purposes" is not use for "right of way purposes"; neither is use for "parking and picnic purposes" a use for "right of way purposes". These latter uses are distinct uses, and are so treated in the statute under which plaintiff claims its authority in this proceeding. If plaintiff deemed it necessary to acquire Parcel No. 2 for "drainage", "parking", or "picnic" purposes, the statute required as a condition of its right to condemn that it so declare such specific purpose by its resolution.

Plaintiff had no authority under its resolution that specified "right of way purposes" as the sole objective for the acquisition, to proceed by condemnation action for the condemnation and appropriation of a tract of land that it may have deemed necessary for other

and undisclosed purposes, and which the evidence shows to be unnecessary and not used as a part of the right of way. Its attempt so to do in this case was an abuse of discretion vested in it by the statute, and is subject to review and correction by the court.

The trial court properly heard and determined the question of necessity and the authority of the plaintiff as a preliminary matter prior to the impaneling of the jury. *City of Eugene v. Johnson,* supra.

The judgment is affirmed.