Argued October 29, affirmed November 13, 1917.

# MICHELLOD *v.* OREGON–WASHINGTON R. & N. CO.*

(168 Pac. 620.)

**Appeal and Error—Reservation of Grounds of Review—Necessity of Showing in Record.**

1. The exclusion of evidence is not reviewable where the bill of exceptions does not show any objection to the ruling, but, on the contrary, contains a notation that there was no exception.

---

*On liability of carrier in respect to property which it accepts improperly packed or crated, see notes in 29 L. R. A. (N. S.) 1214; L. R. A. 1915D, 1077.                                        REPORTER.

### Carriers—Loss of or Injury to Goods—Admissibility of Evidence.

2. In an action against a carrier for damages caused by the freezing of a shipment of a bottled beverage, evidence that the car used for the transportation of the shipment was of the kind usually employed for the carriage of perishable freight in the winter-time, and was the best known vehicle for that purpose, was properly admitted, as defendant's liability was dependent upon its negligence, and, negligence being a question of fact, the triers of the fact were entitled to know the character and construction of the car.

### Carriers—Loss of or Injury to Goods—Liability.

3. If a carrier, in transporting a shipment of a bottled beverage, acted with prudence commensurate with the duty imposed upon it, it was not liable for the beverage freezing.

### Carriers—Bills of Lading—"Apparent Good Order, Contents and Condition of Contents of Packages Unknown."

4. Where a bill of lading, describing the goods shipped as carbonated nonalcoholic beverage, further recited that the shipment was received in "apparent good order, contents and condition of contents of packages unknown," the terms of the bill of lading did not give conclusive notice to the carrier of the inherent quality of the goods, so as to enjoin upon it greater prudence in preventing the shipment from freezing as the quoted words refer only to the extrinsic appearance of the packages, and bound the carrier to no greater extent in the absence of any further showing.

[As to limiting liability of carrier by bills of lading, see note in 88 **Am. St. Rep.** 74.]

### Carriers—Loss of or Injury to Goods—Instructions.

5. In an action for damages to a shipment of goods under a bill of lading reciting that the shipment was in "apparent good order, contents and condition of contents of packages unknown," plaintiff requested an instruction that the bill of lading in evidence recited that the goods were in good order and condition when received by defendant, that by such bill of lading defendant contracted to deliver the goods in like condition, and if the jury believed that they were not delivered in as good condition as when received by defendant, ordinary wear and tear, deterioration, defect or vice in the property excepted, and that plaintiff was damaged, then plaintiff was entitled to recover, unless they believed that the damage or injury resulted from some fault or negligence of plaintiff or his consignor. *Held*, that the court properly modified this instruction to state that the bill of lading recited that the goods were in apparently good condition, but that the contents and condition of the contents of the packages were unknown.

### Carriers—Loss of or Injury to Goods—Burden of Proof.

6. In an action for damages to a shipment, it was plaintiff's duty to establish that the goods were in good order when delivered to the carrier.

### Carriers—Loss of or Injury to Goods—Instructions.

7. In an action against a carrier for damages caused by the freezing of a shipment of a bottled beverage, where it appeared that the consignor received a carload of the beverage, and that he took

from the car a number of barrels containing the beverage and delivered them to defendant for shipment to plaintiff, an instruction was warranted that, if the shipment was damaged while being transferred by plaintiff or its agent from one car to another, defendant would not be responsible, as the jury was authorized to consider the consignor as plaintiff's agent for the purpose of transshipping the goods.

**Carriers—Injury to Goods—Improper Packing.**

8.   A carrier, to whom barrels containing a bottled beverage were delivered for transportation and which transported them without negligence, was not liable for any injury due to improper packing of the bottles in the barrels; it not being authorized to open the containers, but bound to ship them in the form in which they were delivered to it, unless manifestly in bad order.

**Trial—Instructions—Construction as a Whole.**

9.   An instruction complained of must be read in connection with the whole charge.

**Carriers—Loss of or Injury to Goods—Instructions.**

10.   Where, in an action against a carrier for damages to a shipment of a bottled beverage, the only fault imputed to defendant was that it allowed the liquid to freeze, an instruction that, though the beverage was frozen upon its arrival at its destination, the jury could not find for plaintiff, unless they found from the evidence alone, disregarding their personal views and opinions, that the faulty or flat condition of the beverage was due entirely to the frozen condition, was properly given, since, if the beverage became flat and stale with age, defendant was not liable if the depreciation was caused solely from that quality.

**Trial—Instructions—Applicability to Evidence.**

11.   In such action, an instruction that the jury could not guess, speculate or presume that plaintiff had suffered damage, and that unless they found, from the evidence, that plaintiff had actually been damaged by defendant's negligence, plaintiff had not sustained the burden of proof and could not recover, and that unless, from the evidence alone, they could determine with reasonable certainty the amount of damage, they could not return a verdict in favor of plaintiff, was applicable to the issues.

**Appeal and Error—Review—Conclusiveness of Verdict.**

12.   In an action against a carrier for damages to a shipment, a jury finding for defendant was conclusive on the Supreme Court on the question of the weight of the testimony.

From Wallowa: John W. Knowles, Judge.

In Banc.   Statement by Mr. Justice Burnett.

The substance of the complaint against the defendant, a common carrier, is that about January 11, 1916, at La Grande, Oregon, in consideration of the payment

to it of the ordinary freight charges, the defendant agreed to carry from that place to Joseph, Oregon, and there deliver to the plaintiff 15 barrels of quarts and 25 barrels of pints of bottled temperance beverage of the value of $500, which the plaintiff then and there delivered to the defendant who received the same for the purposes mentioned, and

"that through the negligence and carelessness of the defendant the whole of said goods were permitted to become frozen while in the defendant's care and control as a common carrier and same was delivered to the plaintiff by the defendant in a greatly damaged condition thereby to the plaintiff's damage in the sum of $473.60."

The answer admits the defendant's character as a corporate carrier for hire between La Grande and Joseph, and that in January, 1916, it received for transportation between those points a shipment of temperance beverage called "tally." It challenges the plaintiff's first pleading in all other respects. The essence of the affirmative defense is contained in this allegation:

"That said shipment was promptly and safely transported by the defendant in a suitable and proper car over the usual route, in due course of business, and without unnecessary delay from La Grande, Oregon, to Joseph, Oregon, and was then and there delivered to X. Michellod, as consignee in the same order and condition said shipment was in when it was received by the defendant at La Grande, Oregon, except depreciation of said shipment, due to its inherent perishable character, and whatever if any damage occurred to said shipment, it was occasioned by the negligence of the plaintiff, and of the shipper, due to the failure of the shipper to use reasonable care to prevent said shipment from being frozen while being transferred at La Grande from the through car, and the improper man-

ner in which the shipper loaded said shipment into the car and his failure to use any care or caution to so load or pack said shipment as to prevent it being frozen in transit, and the failure of the plaintiff to use reasonable care to prevent said shipment from being frozen while being transferred from the car at Joseph, Oregon, to plaintiff's place of business, and the failure of the plaintiff to use reasonable care in storing said shipment in a proper storehouse at Joseph, Oregon, in order to prevent said shipment from freezing, and whatever if any damage occurred to said shipment was occasioned by the negligence of the plaintiff and his agents as above set forth, and the inherent perishable character of said shipment, and was not caused by or through any negligence on the part of this defendant, its agents or employees.

"That the shipment herein referred to is the same shipment referred to in plaintiff's complaint."

The reply denies the new matter of the answer wherever inconsistent with the complaint. A jury trial resulted in a verdict and judgment for the defendant and the plaintiff appeals.                    Affirmed.

For appellant there was a brief and an oral argument by *Mr. John P. Rusk.*

For respondent there was a brief over the names of *Mr. W. A. Robbins, Mr. Arthur C. Spencer* and *Messrs. Boyd & Hawkins,* with an oral argument by *Mr. Robbins.*

Mr. Justice Burnett delivered the opinion of the court.

It seems that the goods in question were part of a carload of the beverage received from a St. Louis concern by U. Lottes of La Grande and reshipped by him from there to the plaintiff at Joseph. There is evi-

dence to the effect that the goods as they arrived at La Grande consisted of bottles of the drink packed in barrels which, in turn, were stowed in an ordinary freight-car in fresh horse manure. At the latter place the car was opened by the consignee who took out forty of the barrels containing the bottled beverage and tendered them in that shape to the plaintiff for shipment, as stated, and for that purpose carried them about 150 feet to the defendant's warehouse where the employees of the latter put them into a refrigerator-car which the defendant transported to Joseph where it arrived about 8:30 P. M. on January 12, 1916. It was opened the next morning when it was found that the goods were frozen to a large extent, in which condition they were delivered to the plaintiff, not, however, without his protest. The straight bill of lading under which the shipment moved recites that the property described therein as "15 bbls. Carbonated Beverage Non Alcoholic, 6 dozen large, and 25 bbls. Carbonated Beverage Non Alcoholic, 10 dozen small," were received "in apparent good order except as noted, contents and condition of contents of packages unknown." By the terms of this instrument it was made subject to the conditions printed on the back thereof in which latter it is prescribed that

"except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession) the carrier or party in possession shall not be liable for loss, damage or delay * * resulting from a defect or vice in the property. * * "

1. We proceed to a review of the assignments of error. The first two relate to the refusal of the court to receive certain telegrams passing between the local agent of the defendant and its principal claim agent

in Portland, and the conversation between the plaintiff and the former, regarding them and relative to the proposed settlement and adjustment of the plaintiff's loss.   Although all this matter was excluded by the court, the bill of exceptions does not show that the plaintiff objected to the ruling in that respect.   On the contrary the bill has a notation that there was no exception.   It is therefore eliminated from the case before us.

2, 3.  The other specifications, aside from objections to the giving and refusal of instructions, relate to the admission by the court over the plaintiff's objection of evidence on the part of the defendant purporting to show that the car used for the transportation of the merchandise was of the kind usually employed for the carriage of perishable freight in the winter-time and that it was the best known vehicle for that purpose.

''Where the destruction of or the injury to the goods is due to their inherent nature and qualities, or to defects therein, the carrier is not liable, if its own negligence did not occasion or contribute to the injury. * * With respect to perishable goods which themselves contain the elements of destruction governing their loss or deterioration, the carrier is not an insurer, and is no more liable for destruction or injury resulting solely from the inherent infirmity in the goods than for loss entailed solely by an act of God or of the public enemy, or by the carelessness of the shipper. * * It may perhaps also be stated as a general proposition that the carrier is not liable for loss, happening from the operation of natural causes without negligence or fault of the carrier'': 10 C. J., p. 121, § 148.

In *Philadelphia etc. R. R. Co.* v. *Diffendal*, 109 Md. 494 (72 Atl. 193, 458), the property in question was a shipment of peaches and the court stated the rule applicable in this language:

''The ordinary common-law liability of a common carrier as to most commodities committed to its cus-

tody for transportation, is that of an insurer against all risks incident to the transportation, save such as result from the act of God or the public enemy, or the fault of the shipper, but with respect to perishable goods, which themselves contain the elements of destruction occasioning their own loss or deterioration, the carrier is not an insurer, but is required to exercise reasonable care and diligence to protect the goods from injury while in its custody as well as to deliver them with dispatch to the consignee or connecting carrier.''

*Schwartz & Co.* v. *Erie R. R. Co.*, 128 Ky. 22 (106 S. W. 1188, 32 Ky. Law Rep. 777, 15 L. R. A. (N. S.) 801), was a case concerning a carload of apples and the court held in substance that where the injury to the goods is due to their own inherent nature and from natural causes, such as freezing, without fault on the part of the carrier, he is not responsible. A shipment of potatoes which froze en route was considered in *McGraw* v. *Baltimore etc. Ry. Co.*, 18 W. Va. 361 (41 Am. Rep. 696), and it was there decided that if the injury was due to the nature of the goods the carrier was exempt from liability if he showed that he was free from negligence. Liability for damages to a shipment of wine from New York to St. Louis, which froze after its arrival at destination, was made to depend upon the carrier's negligence in *Wolf* v. *American Express Co.*, 43 Mo. 421 (97 Am. Dec. 406). In *Baltimore etc. Ry. Co.* v. *Dever*, 112 Md. 296 (75 Atl. 352, 21 Ann. Cas. 169, 26 L. R. A. (N. S.) 712, 721), the same rule is applied to a shipment of cattle where the animals acquired Texas fever en route from Missouri to Maryland. With this principle in mind it was proper for the court to allow the defendant to show that the car was the best known means of transporting perishable articles in the winter-time. If the defendant acted with prudence commensurate with the

duty imposed upon it, it fulfilled the law relating to such property. Negligence being ordinarily for the jury, it was proper that the triers of the fact should know the character and construction of the car in which the shipment moved in order to determine whether the defendant was negligent or whether it acted with reasonable prudence and care under the circumstances. That negligence is usually a question of fact, is taught by the following precedents: *Palmer* v. *Portland Ry., L. & P. Co.,* 56 Or. 262 (108 Pac. 211, 59 Am. & Eng. Ry. Cas. (N. S.) 68); *Strang* v. *Oregon-Wash. R. & N. Co.,* 83 Or. 644 (163 Pac. 1181).

4. The plaintiff argues that the defendant was chargeable by its bill of lading with notice of the character of the shipment and consequently that greater prudence was enjoined upon it. We recall that the instrument recited that the property described was received in "apparent good order, contents and condition of contents of packages unknown." Such terms often have been held to be not conclusive upon anyone who transports property. They amount to a statement by the issuing carrier that it has received goods which the shipper describes in the language mentioned, but go no further unless the character of the chattels thus delineated is openly visible. The syllabus to *Miller* v. *Hannibal etc. R. R. Co.,* 90 N. Y. 430 (43 Am. Rep. 179), is in this tenor:

"A carrier receiving 30 barrels for transportation delivered the shipper a bill of lading certifying in the printed part the receipt of 'the following described packages in apparent good order, contents and value unknown,' which was followed in writing by the words 'articles: 30 bbls. eggs.' Held, that this was not a representation that the barrels contained eggs, and the carrier was not liable, as upon such a representation, to a transferee of the bill of lading, who upon the faith

and security of it paid the shipper's draft, when the barrels in fact contained nothing but sawdust.''

See, also, *Thyll* v. *New York etc. R. R. Co.*, 84 N. Y. Supp. 175; 1 Wds. & Phr., p. 442; 2 Idem, p. 1494; 4 Idem, p. 3124; *Shepherd* v. *Naylor,* 71 Mass. (5 Gray) 591. It is plain, therefore, that there was nothing in the terms of the bill of lading giving conclusive notice to the defendant of the inherent quality of the goods in question. The barrels were tendered to the defendant for transportation. It is not even alleged that they were in good order. In that connection it is held in *Marquette etc. R. R. Co.* v. *Kirkwood,* 45 Mich. 51 (7 N. W. 209, 40 Am. Rep. 453), that the shipper must show that the goods were in good order when they were delivered to the carrier because the latter ordinarily cannot open the packages and examine their contents. That case applies that doctrine in favor of every connecting carrier. It is not necessary in this instance to extend the rule so far, because the charge is against but one carrier on a single shipment. In *Orunsten* v. *New York C. Ry. Co.*, 165 N. Y. Supp. 996, 997, it is said that the shipper must show that the goods were perishable; that the transportation could be made in a satisfactory manner; and that they were in good condition at the time of the shipment. In *Sheble* v. *Oregon R. & N. Co.*, 51 Wash. 359 (98 Pac. 745), the court, speaking of the presumption that property once shown to be in good condition would be presumed to continue so, said, in substance, that the presumption goes to maintain the quality of goods only as it was at the time of shipment. The doctrine seems to be that the rule calling upon a carrier to show want of negligence when it delivers chattels in a damaged state is based on the presumption that articles once shown to be in good order continue in that con-

dition, and that hence the shipper must show that he delivered them to the carrier uninjured as a basis on which the presumption may rest. The words in the bill of lading refer only to the external appearance of the packages and bind the defendant to no greater extent in the absence of any further showing. The question was thus one for the jury to determine whether, in furnishing a car of the kind employed, the defendant acted with reasonable prudence so as to be free from negligence if, in fact, it turned out that the goods were inherently perishable. The verdict must therefore stand unless vitiated by some erroneous direction by the trial judge.

5. The plaintiff contends that the court was wrong in modifying this request to charge:

"The jury are instructed that the bill of lading in evidence recites that the goods were in good order and condition when received by the defendant, and by said bill of lading the defendant contracted to deliver said goods in like condition at Joseph, Oregon, and if the jury believes from the evidence that the goods were not delivered in as good order and condition as when received by defendant, ordinary wear and tear, deterioration, defect or vice in the property excepted, and that the plaintiff was injured, and has sustained damage thereby, then the plaintiff is entitled to recover, unless the jury believe from the evidence that the damage or injury to such goods resulted from some fault or negligence of the plaintiff or his consignor."

The instruction modifying the request of plaintiff reads thus:

"The jury are instructed that the bill of lading, offered in evidence, recites that the goods were in apparently good condition, but that the contents and condition of contents of packages was unknown to the railroad company, and by said bill of lading the defendant contracted to deliver said goods in like condi-

tion at Joseph, Oregon, as the same were received by it at La Grande, Oregon; if the jury believe by the evidence that the goods were not delivered in as good order and condition as when received by defendant, ordinary wear and tear, deterioration, defect or vice in the property excepted, and that the plaintiff was injured and has sustained damages thereby, then the plaintiff is entitled to recover, unless the jury believe from the evidence, that the damage or injury to such goods resulted from some fault or negligence of the plaintiff or his consignor.''

The court correctly recited the terms of the bill of lading and otherwise gave the desired instruction. The one, the giving of which the plaintiff asked, required the court to state that the bill admitted that the goods were in actual good order and condition when in truth it said they were only in apparent good condition and that the contents were unknown. There is no error in this assignment.

6–8. Another plaint raises the question about whether it is incumbent upon the plaintiff to state that the property was in good order when it was received by the carrier. The court told the jury that:

''Before you are authorized to return a verdict in favor of plaintiff for any sum, you must find from the evidence in this case, that when the shipment in question was tendered to the defendant at La Grande, Oregon, it was in good condition, and such finding cannot be based upon a conjecture or guess as to the condition of the shipment at the time of delivery to the defendant. And if you find, therefore, that there is no evidence in this case, that the goods were in good condition, when delivered to the defendant at La Grande, then you cannot return a verdict in favor of the plaintiff.''

The precedents already cited show that it is the duty of the shipper to establish the condition of the goods at the time they were intrusted to the carrier. There

was no mistake in instructing the jury that if the shipment in question was damaged while being transferred by the plaintiff or its agent from one car to another the defendant would not be responsible. There was evidence to the effect that the plaintiff's consignor opened the St. Louis car, took out the barrels in question, and took them to the warehouse of the defendant at La Grande. For this purpose the jury was authorized to consider the consignor as the agent of the plaintiff for the purpose of transshipping the goods; and there was enough to go to the jury on the subject treated of in this instruction. The same is true of the handling of the goods at the other end of the line by the plaintiff's own employees. It was objected that the court was wrong in instructing the jury to the effect that the defendant could not be held liable for injury due to the improper packing of the bottles in the barrels. The defendant was not authorized to open the containers, but was bound to ship the goods in the form in which they were delivered to it unless they were manifestly in bad order. Hence, if the loss was due to the manner in which the packages were constructed the defendant would not be liable provided it was not negligent in the matter of its actual transportation.

9, 10. The court instructed the jury among other things:

"If you find from the evidence in this case that the beverage contained in this shipment will depreciate and become damaged in this transit, due to its inherent nature, then I instruct you that the carrier cannot be held liable for any such deterioration or damage."

This instruction must be read in connection with the whole charge to the jury. It may be that the beverage would become flat and stale with age, in which case

the defendant would not be liable if the depreciation was caused solely from that quality. The only fault imputed to the defendant is that it allowed the liquid to become frozen. The court therefore was correct in saying to the jury:

"Even though you find from the evidence in this case that the 'tally' in question was frozen upon arrival at Joseph, I further instruct you that you cannot return a verdict in favor of the plaintiff unless you find from the evidence alone, disregarding your personal views and opinions, that the faulty or flat condition of the tally was due entirely to the frozen condition."

11. The following charge was also applicable to the issues in this case:

"I instruct you, gentlemen of the jury, that you cannot guess, speculate or presume that the plaintiff has suffered damage in this case, and unless you find from the evidence alone, that the plaintiff has actually been damaged by the negligence of the defendant, if you so find, then I instruct you that the plaintiff has not sustained the burden of proof in this case, and cannot recover, and unless you can from the evidence alone in this case determine with reasonable certainty the amount of damage, then you cannot return a verdict in favor of plaintiff and against the defendant."

12. The substance of the case is that, without alleging that the shipment was in good order when it was delivered to the carrier, the plaintiff charged negligence upon the defendant in that it allowed the same to become frozen while in its custody. The company undertook to show that it was free from negligence in its conduct respecting the property and that the damage, if any, was due to its inherent quality. It seems to have convinced the jury of the correctness of its position and the verdict is conclusive of the fact. Therefore, we cannot yield to the able argument at the

hearing by plaintiff's counsel on the weight of the testimony. We are concluded on this point by the decision of the jury. The conduct of the Circuit Court at the trial is devoid of error and the judgment must be affirmed.                                                    AFFIRMED.