Argued March 15, reversed and remanded April 16, 1918.

## DANIELS v. NORTHERN PAC. RY. CO.*

(171 Pac. 1178.)

**Evidence—Opinion Evidence—Amount of Damages.**

1. In an action by the consignee against a carrier for damages to butter alleged to have become putrid through the carrier's negligence, it was error to permit a witness for the consignee to testify to the amount of damage to the butter from foul odors to which he stated it

*On duty of carrier with respect to refrigerator-cars, see note in 10 L. R. A. (N. S.) 317; particularly as to duty to re-ice cars, see page 318 of above note.   REPORTER.

was susceptible, as the witness thereby invaded the province of the jury in declaring the amount of the damages.

[As to when the opinions of nonexperts are admissible, see note in 30 Am. St. Rep. 38.]

### Carriers—Perishable Goods—Measure of Carrier's Duty.

2. A carrier of perishable goods is not liable as insurer, but the measure of its duty is to use reasonable care and diligence, considering the nature of the goods.

### Trial—Instructions—Perishable Goods—Action for Damages.

3. In an action against the carrier for damage to perishable goods in a refrigerator-car, wherein issue was joined on the averment that it failed to re-ice the car and otherwise properly care for the goods in transit, and it was not directly alleged that the property was delivered to it in good order by the initial carrier, and instructions tendered by the carrier embraced its contention, as disclosed by the pleadings, that the goods were in bad order when received by it, it was entitled to have that theory presented to the jury, there being testimony on that point supporting such instructions, and it was error for this reason to refuse them.

### Trial—Instructions—Refusal.

4. There is no error in refusing an instruction when it is without a basis in the evidence authorizing the jury to consider it.

### Trial—Instructions—Perishable Goods—Action for Damages.

5. In an action against a carrier for damage to perishable goods in a refrigerator-car, wherein issue was joined on the averment that it failed to re-ice the car and otherwise properly care for the goods in transit, and it was not alleged that the goods were delivered to it in good order by the initial carrier, and plaintiff did not point out anything defendant ought to have done, but did not, which would have kept the articles wholesome and merchantable, a charge not allowing defendant to exonerate itself by showing that it did in fact thoroughly re-ice the car and properly care for the property while in its custody, but imposing on it the additional burden, not included in the pleadings, of proving the damaged condition was due to some cause over which it had no control, was reversible error, as going beyond and expanding the issue tendered.

### Carriers—Perishable Goods—Duty of Connecting Carrier.

6. If goods in a refrigerator-car are sound when a carrier takes them from an initial carrier, its whole duty is fulfilled if and when it thoroughly re-ices the car as reasonably necessary, and with fair diligence takes proper care of it over its line.

### Pleading—Carriage of Goods—Action for Damages.

7. It is not enough to plead evidence that might tend to prove the condition of property when a defendant carrier, sued for damages, took charge thereof.

### Trial—Instructions—Application to Issues.

8. Instructions must present the contention of each party to the jury, and they must correspond to the issues presented.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 1.

The defendant is a railway common carrier of goods. The plaintiff alleges in substance that he purchased in Concordia, Kansas, 330 boxes of butter and 37 boxes of poultry and caused them to be shipped in good order by another railroad company connecting with the line of the defendant consigned to himself at Portland, Oregon. He says:

"That when the said poultry was delivered to the said railroad company by the said John Stewart, consignor, for shipment as aforesaid, the same was in first class condition, the poultry having been solidly frozen in the boxes and thoroughly iced by the consignor after being packed in said car, but by reason of the negligence and carelessness of the defendant, its agents and servants in charge and control of said car containing said goods in failing to thoroughly re-ice the same and otherwise properly care for the said poultry in boxes in transit"

the same became putrid so that it was utterly valueless when it arrived at its destination in Portland. Substantially the same averment is made concerning the butter which is said to have become tainted by the odor of the decaying fowls.

The defendant denies all the allegations in the complaint. The answer says in effect that the defendant received the car at Billings, Montana, but that at the time the poultry was in a putrid condition because it had not been properly frozen and prepared before loading, and goes on to say that the company transported the shipment to Portland with all possible speed and all the ordinary care and caution required, delivering the articles at their destination in the same condition in which they were when received by the de-

fendant at Billings; that at once it notified the plaintiff of the arrival of the car but that he did not begin to unload it until two days afterward. The answer further charges negligence upon the plaintiff in failing to remove the goods from the car immediately on its arrival.

The new matter of the defendant's pleading was traversed by the reply. The judgment went for the plaintiff and the defendant appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Omar C. Spencer* and *Messrs. Carey & Kerr,* with an oral argument by *Mr. Spencer.*

For respondent there was a brief over the names of *Mr. Ralph A. Coan* and *Messrs. Pearce & Meloney,* with an oral argument by *Mr. Coan.*

BURNETT, J.—1. One error complained of by the defendant is that a witness who testified that he had been in the business of dealing in butter, eggs and poultry since 1902 and that butter was very susceptible to foul orders which would damage it was allowed to answer this question, "What would be the amount of such damage?" by saying, "Well, the amount of such damage would run as high as seven to eight cents a pound." That this was error was decided in *Burton* v. *Severance,* 22 Or. 91 (29 Pac. 200); *Pacific Live Stock Co.* v. *Murray,* 45 Or. 103 (76 Pac. 1079); *Montgomery* v. *Somers,* 50 Or. 259 (90 Pac. 674); *Pacific Ry. & Nav. Co.* v. *Elmore Packing Co.,* 60 Or. 534 (120 Pac. 389, Ann. Cas. 1914A, 371), and other cases. The reason of this rule is that a witness is not allowed to invade the ultimate province or function of the jury to declare the amount which will compensate the plaintiff for the injury suffered. If good butter had a market

price known to dealers generally and to the witness in particular he might have stated that price and if he knew the butter after it became tainted and that it had a market price in that condition he might have told what it was. He might, also, have given his opinion that the quality of the butter would be depreciated a certain percentage but he would have no right to assess the amount of damage per pound. That must be left to the jury.

The bill of exceptions discloses that there was some testimony to the effect that the shipment was delivered to the initial carrier in good condition and that on arrival at Portland, Oregon, it was delivered by the defendant in bad order. From the same source we learn that the defendant offered the depositions of sundry witnesses who handled the refrigerator-car in question from its arrival in Billings, Montana, to Portland; that the car was sealed with the seals of another road; that ice and salt were supplied in the ice-boxes of the car whenever needed while it was in the custody of the defendant and that it was properly handled and transported over the line of the defendant in the usual time and without unnecessary delay. It is said in the record that the plaintiff offered no evidence to rebut the testimony of the defendant and tendered nothing to prove how the car was handled from the time it left Concordia until it reached Portland. The defendant seasonably requested the three following instructions:

"If you find in this case that the defendant received the carload of poultry and butter and used reasonable diligence in re-icing the car and handling it through to its destination in Portland, and offered delivery of it in the same condition as when it was received at Billings, Montana, then the defendant has performed its full duty to the plaintiff and there can be no recovery against it in this case."

"It is alleged in the second amended complaint that the negligence of the defendant consisted in its failure to thoroughly ice the butter and poultry and otherwise properly care for the same while in transit. I charge you that the defendant railway company did not insure against natural decay of the produce shipped except such decay as would happen because of its failure to use reasonable diligence in re-icing and salting the car. If when this produce reached Portland it was in a worse condition than when it left Concordia, Kansas, because of its age, nature or quality or because it was unable to stand the summer weather under ordinary and reasonable car refrigeration, and you find that it had ordinary and reasonable car refrigeration, then there can be no recovery in the case against the defendant."

"If you find in this case that the damaged condition of the butter or poultry was caused by the failure of the shipper at Concordia, Kansas, to properly prepare the same, or to properly load it in the car, or to properly ice or cool the car at the beginning of the journey, or if you find that the damaged condition of the poultry or butter was caused by the failure of the Chicago, Burlington and Quincy Railroad Company to ice or care for the car, and that the defendant Northern Pacific Railway Company used reasonable diligence in icing and handling the car from the time it received the car until it offered delivery, then there can be no recovery against the defendant Northern Pacific Railway Company in this case."

·These were refused over the exception of the defendant and the court charged the jury on that branch of the case as follows:

"Your first inquiry, gentlemen, will be what was the condition of the poultry and butter at the time it was shipped at Concordia, Kansas; and if you find from the evidence in this case that this butter and poultry was in good condition and properly packed for shipment at the initial point of shipment, which was Concordia, Kansas, and that when it arrived in the City

of Portland it was in a tainted and putrid condition, then the presumption of law arises that it became tainted en route, and through the failure of the transporting company. The burden would rest upon the defendant, therefore, to show that the property if received in good condition, became tainted from some cause for which it was not responsible. And it would have to satisfy you in that case by a preponderance of the evidence that the tainted and putrid quality of those goods when they arrived in the City of Portland, if such you find it to be, was caused by something which it could not control, either by the act of the shipper or by some inherent quality of the goods themselves, which produced this putrefaction and taint. The burden of proof would likewise be upon the company to show that at the time the goods were transferred to it in the State of Montana, or at whatever point the transfer was made, that the goods were then in a putrid or tainted condition, because, as I have said, if it be found by you that the goods were in good condition when shipped, the presumption would run that they continued in that good condition at the time of transfer to this company. The company, however, might show that at the time they received the goods they were in a tainted or putrid condition, but the burden would rest upon the company to establish that condition by a preponderance of the evidence.''

2–4. The essence of the accusation against the defendant is that it failed thoroughly to re-ice the car and otherwise properly to care for the goods in transit. The issue was joined on this averment only and nothing further. It is not directly alleged that the property was delivered to the defendant itself in good order. The nearest approach to that is that the chattels were in that condition when delivered to the initial carrier. It is admitted that the property was perishable in its nature and hence the company was not liable as an insurer. The measure of its duty was to use reasonable care and diligence considering the nature of the chat-

tels involved. This feature was discussed in *Michellod* v. *Oregon-Washington R. & N. Co.,* 86 Or. 329 (168 Pac. 620). These first two instructions embraced the contention of the defendant as disclosed by the pleadings and it was entitled to have that theory presented to the jury there being testimony on that point supporting such instructions. For this reason it was error to refuse them. *Bingham* v. *Lipman,* 40 Or. 363 (67 Pac. 98); *Scholl* v. *Belcher,* 63 Or. 310 (127 Pac. 968); *West* v. *McDonald,* 64 Or. 203 (127 Pac. 784, 128 Pac. 818), are illustrative of this rule. There is no evidence disclosed by the bill of exceptions indicating that there was any failure at Concordia, Kansas, properly to prepare the shipment, either in loading or cooling it at the beginning of the journey. Neither was there anything tending to show that the initial carrier was remiss in its duty; hence the third instruction is without a basis authorizing the jury to consider it. It was properly refused.

5–8. The charge given by the court does not allow the defendant to exonerate itself even by showing affirmatively that it did in fact thoroughly re-ice the car and properly care for the property while in its custody, but imposes upon it the additional burden, not included in the pleadings, of proving that the damaged condition was due to some cause over which it had no control. If the goods were damaged by decay when they came into the possession of the defendant the re-icing would not have restored them. On the other hand, if they were sound when the defendant took them, its whole duty in the case, as the pleadings state the issue, was fulfilled if and when it thoroughly re-iced the car as reasonably necessary and with fair diligence took proper care of it over its line. Further than this the plaintiff does not point out anything which the defend-

ant ought to have done but did not which would have
kept the articles wholesome and merchantable.    As
they were admittedly perishable in their nature, the
defendant was not an insurer that the goods would
arrive in good condition.    If it had been alleged, but
it was not, that the poultry. and butter were sound
when the defendant took charge of them, the plaintiff,
to prove the averment, if denied, could have used in
evidence the presumption spoken of in the excerpt
quoted by plaintiff from 4 R. C. L., Section 383, to the
effect that if it were shown that the articles were
sound when delivered to the initial transporting road
the supposition is that they remained so even to the
ultimate carrier who must defend himself by overcom-
ing the effect of the presumption if he delivers them
in bad order.    It would seem to be quite as important
to aver that the shipment was in good order when
the defendant received it as to allege it was in bad
order when delivered at Portland for the company is
not responsible for injury to the goods not occurring
while they are in its custody: 10 C. J., § 897.    It is
not enough to plead evidence that might tend to prove
the condition of the property when the defendant took
charge of it.    The complaint contains no statement
that the goods were delivered to the defendant in good
order; hence the direction given by the court goes be-
yond and expands the issue tendered.    The standard
rules relating to instructions to a jury require that
the contention of each party must be presented to the
jury and that they must correspond to the issues pre-
sented.    For the reasons indicated the judgment is
reversed and the cause remanded for further proceed-
ings.                                    REVERSED and REMANDED.

MCBRIDE, C. J., and BENSON and HARRIS, JJ., concur.