Argued March 10; modified May 31, 1938

# COOS BAY LOGGING CO. v. BARCLAY et al.

### (79 P. (2d) 672)

In Banc.

*J. B. Bedingfield,* of Marshfield (David J. Grant, Jr., of Marshfield, on the brief), for appellants.

*L. A. Liljeqvist,* of Marshfield (Liljeqvist, Swanton & McKeown, of Marshfield, on the brief), for respondent.

BEAN, C. J. This is an action instituted for the purpose of condemning a right of way for a logging road and logging railroad or way. The cause was tried to the court and a jury. A verdict and special verdict were rendered, which, omitting the formal parts, were as follows:

"We the jury, duly impanelled to try the above entitled cause find for the plaintiff upon all the issues, and we assess the compensation damages to be paid to the defendant, Hugh Barclay, by the plaintiff at and in the sum of $1,000.00, and defendant be paid an attorney fee in the sum of $750.00."

"Special Verdict.

Question 1. What is the fair cash market value of the land actually sought to be appropriated for a right of way by the plaintiff herein without considering the reservations set forth in subdivisions (1) to (10), inclusive, of paragraph $X\frac{1}{2}$ of plaintiff's complaint, excluding paragraph (a) of subdivision 10 on page 10E and 10F of the Complaint?

Answer. $1260.00.

Question 2. What is the fair cash market value of the land actually appropriated by such right of way,

taking into consideration the reservations set forth in and referred to in Question number 1?

Answer. $460.00.

Question 3. Is there any damage to the remaining adjacent lands of the defendant outside of the right of way appropriated by reason of the way appropriated?

Answer (Yes or No). Yes.

Question 4. If you answer yes to question 3, state what the damage to the remaining adjacent lands of the defendant Hugh Barclay is by reason of the appropriation without considering the reservations set forth and referred to in question number 1.

Answer. $800.00.

Question 5. If you answer yes to question 3, state what the damage to the remaining adjacent lands of the defendant Hugh Barclay is, taking into consideration the reservations set forth in and referred to in question 1?

Answer. $540.00.''

From a judgment on the regular verdict, defendants appeal. Defendants Hugh Barclay and Mabel Barclay, who will hereafter be termed defendants, are the owners of quite a large tract of land, described in the complaint, and lying along the South Coos river. Lots 4 and 5 of section 26 lie on the southerly side of Coos river; the remaining portion of the land lies along the northerly bank of South Coos river. The lower end of this land is about a mile above navigable tidewater and about 18 miles from the city of Marshfield. This land is rough and mountainous, except for small portions of bottom land. A portion of the land has been used for agricultural purposes for many years. Defendants have leased it to farm tenants, one of whom is still in possession. Defendants maintain a small summer home on a part of the land. The South Coos river is a beautiful moun-

tain river and runs for a distance of approximately two miles through the lands of defendants in a meandering course. The valley is narrow and the banks of the stream are steep in most places. This gorge extends from near tidewater through defendants' lands easterly for many miles into one of the greatest stands of virgin timber in the state of Oregon, containing many billions of feet owned by many different owners, including the United States. The defendants own a considerable amount of timber on their land south of the river.

The proposed railroad, when built, will be within a few feet of the front door of defendants' farm dwelling, which is a substantial building. The right of way sought will cut off a portion of the defendants' barn and will include the milkhouse and a spring from which water is obtained for residence and farm purposes, and it passes between the house and barn. Defendants have an orchard which lies immediately adjacent to the right of way. Defendants assert that their land along the river banks is peculiarly suited and desirable for the construction of summer homes.

The northerly or right bank of this river, as it flows through defendants' land, is peculiarly adaptable to the location of a railroad into this great body of timber lying between the head of tidewater and the summit of the Coast mountain range.

Plaintiff is the owner of a large tract of timber described in the complaint. It has timber for a five- to ten-year operation on the basis of a railroad bringing out 75 to 150 million feet of timber per year. It owns a sawmill at North Bend and operates another at Empire, Oregon. It desires to log its timber lands and has a contract of 169,000,000 feet of timber on the Umpqua Timber Company tract; 22,000,000 on Hatton tract; 10,500,000 on Sutherlin tract; 800,000 on Paulson tract;

and 60,000,000 on the Irvine tract. A complete description of the right of way desired is set forth in the complaint and platted on an exhibit. The right of way has been surveyed. The land plaintiff seeks to acquire for right of way purposes consists of 21.97 acres.

From one to one hundred twenty-five million feet of timber will be trucked out over the road altogether. The roadway outside of the space occupied by the railroad tracks will be about 16 feet in width, from the upper end to the Barclay upper field below the steep bend, and 24 or 25 feet from there down to the lower end. The company expects to build a railway as soon as the one hundred twenty-five million feet are removed by truck, and desires to start the road as soon as the right of way is secured.

Defendants suggest that this route for the proposed right of way is best adapted for use as a railroad and logging road for the removal of timber in the watershed of South Coos river.

It is contended by defendants that for all practical purposes the owner of the strip of land sought as a right of way will be in absolute control of the transportation and marketing of the timber in the watershed of South Coos river, consisting of from six to twelve billion feet. South Coos river is navigable in its natural state at certain seasons of the year for the floating of logs to market. However, due to regulations of the United States engineers for floating logs at the head of tide on South Coos river, no plan has been perfected for the use of the river for this purpose for the past several years. Also South Coos river has stretches of navigable water at all seasons, and these stretches consist of the long, deep pools over which many people navigate small pleasure craft.

At one point on defendants' lands, the proposed right of way extends approximately 250 feet into the channel of South Coos river and the right of way divides defendants' lands, separates their farm buildings and isolates a large part of their property from the river. It leaves a narrow strip of land between the proposed road and the river, except at points where the right of way extends into the channel. Plans and maps have been filed and are in evidence.

Before this case was put at issue the plaintiff amended its complaint whereby it sought to exclude from the rights prayed for in the complaint certain easements and rights to be left in the defendants. Defendants contend that by this amendment the description of the property sought to be condemned by plaintiff was rendered so indefinite and uncertain that the court and jury could not determine what the rights of either party therein would be after condemnation, and also rendered it so indefinite and uncertain that the jury could not determine the damages sustained by defendants, and for this reason the defendants now contend that the complaint contains facts insufficient to give the court jurisdiction of the subject matter and also that there are insufficient facts alleged to constitute a cause of action, and that because of these facts the defendants have been deprived of due process of law.

■ There are 10 reservations proposed for the purpose of minimizing any damages of the defendants. Reservation No. 3 is perhaps as important an one as there is among them and is largely in the same form as the other reservations, with the exception of three reservation, to which we will hereafter refer. The third reservation is as follows:

"That the said defendants shall have the right to the reasonable use on said right-of-way of any truck road and logging railroad constructed, maintained and operated thereon by the plaintiff, after the same has been constructed by it for transportation of logs, timber and forest products thereon and thereover with the right to maintain suitable switching connections on said right-of-way to plaintiff's logging railroad when built, and such use of said right-of-way and any railroad constructed, operated or maintained by the defendants thereon shall be in such a manner as not to unreasonably interfere with the use, construction, operation, maintenance or repair of plaintiff's said logging railroad or the grade or bed of such logging railroad."

The first reservation provides that defendants shall have the right to the reasonable use of the right of way as a road or way for the purpose of hauling and transporting on and over said right of way saw logs, forest and timber products by truck and/or logging railroad.

Reservation No. 2 provides that defendants shall have a right to construct, grade, repair, maintain and operate on said right of way their own truck and/or logging road or railroad in such manner as not to unreasonably interfere with the grade or any truck road or logging railroad of the plaintiff.

The provision that the defendants shall have the right to the reasonable use on said right of way of any truck road and logging railroad constructed by plaintiff for the transportation of logs, timber and forest products thereon, with a right to maintain suitable switching connections on said right of way to plaintiff's logging railroad when built, in such a manner as not to unreasonably intererfere with the use, construction, operation, maintenance or repair of plaintiff's logging railroad, or the grade or bed thereof, is indefinite and does not specify what use the plaintiff will make of

such railroad, or what portion of the truck road or railroad or right of way the defendants could use. If the plaintiff should use the railroad and truck road to a certain specified extent, so that there would be plenty of opportunity for the defendants to also use the truck road and logging railroad for its purposes, and the same was definitely described and was to continue indefinitely, we should have a different picture.

Let us consider the use of the truck road and logging railroad numerically. Assume that during the first two years the plaintiff would require seven-tenths of the use of the truck road and logging railroad and that the defendants, agreeably to the proposed reservation, would desire three-tenths of the use of the truck road and logging railroad. The third year the plaintiff might require eight-tenths of the use of the truck road and logging railroad, as they undoubtedly would have a right to do; then the defendants, if they had constructed an approach to the truck road and logging road, as naturally they must in order to use the same, or had constructed other facilities and expended considerable money in so doing, upon plaintiff's demand to use the right of way to the extent mentioned and that the defendants should not use it so as to interfere with their eight-tenths of the use of the truck road and logging road or way, confusion, dispute and litigation would necessarily follow.

We do not approve or affirm reservations No. 1, No. 2 or No. 3.

Defendants predicate error upon the failure of the trial court to give the following requested instruction which pertains to the use of the road to which we referred:

"I instruct you that you should disregard any offer made by plaintiff in its complaint to Hugh Barclay and

Mabel Barclay to use any part of the land included within the right of way sought to be taken by plaintiff in this action.''

■ We think it is a rule that damages, to be recovered in condemnation proceedings, are controlled, not by the extent of present use by condemnor or present intention of condemnor to use, but by the right to use that is acquired by condemnor: 75 A. L. R. 857 to 861; *Purdy v. Waterloo S. F. & N. Ry. Co.*, 172 Iowa 676 (154 N. W. 881); *Union Railroad Co. v. Raine*, 114 Tenn. 569 (86 S. W. 856). At page 857 of 75 A. L. R., in the annotation, we read in part:

''As a general rule, when a parcel of land is taken by eminent domain, the measure of compensation to be awarded the owner is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy; in other words, the test is the fair market value of the land. 10 R. C. L. 128 * * *.

''In support of the rule that the damages to be recovered in condemnation proceedings must cover all future uses of the condemned property that are or should be within the contemplation of the parties at the time of taking, irrespective of the extent of present needs, or, as otherwise expressed, are controlled not by the extent of present use, but by the right to use that is acquired, see the following cases, * * *.'' (Citing a wealth of authority, both federal and state, and from Canada.

We learn from this annotation, although the point has not been exhaustively covered, that some cases recognize the power of the condemning party to reduce the damages to be paid by limiting, through agreement or stipulation at the time of condemnation, the mode of use or extent of right that is to be acquired. In the present case there has been no agreement or stipulation as to such limitation.

■ In 20 C. J. 768, § 227, it is stated that the landowner cannot be compelled to accept a mere offer by the appropriator to allow him certain rights and privileges or to do some act in his favor in payment or reduction of compensation. The probability that the appropriator will not exercise, or the fact that there is no present intention of exercising, to the full extent the rights acquired should not be considered in reduction of the damages, where there is nothing to prevent a full exercise of such right, since the presumption is that the appropriator will exercise such rights and use and enjoy the property taken to the full extent.

The right of defendants to use the truck road and logging railroad or right of way, in conjunction with the plaintiff, would not be a partnership. It would be a kind of mingled or joint use. If the definition of these proposed reservations, as contained in the complaint and in the judgment order, is permitted to stand, the easements which plaintiff proposes will conflict with the rights which plaintiff clearly states that it is to have in the land. By the complaint and judgment order the defendants are, in effect, told: You can have some of the use of the land if the plaintiff does not want it all, but if you rely upon the plaintiff's evidence, as submitted at the trial, and spend money improving this property so that you can use it, you do so at your own risk, because the plaintiff may come in later and prevent you from using your improvements, or tear them out.

Many of the reservations sanctioned by the courts, where there is permission to construct crossings over the right of way, and the like, are entirely different from the proposed joint user of the right of way.

The case was very thoroughly tried and everything seemed to be explained to the jury. The learned trial

judge, by the special verdict, has rendered it convenient for the court to change the judgment in conformity to section 3, Article VII of the Constitution.

There are several objections made to the introduction of testimony as to the value of the land, which involved the question of the general reservation of the right of way or right to use the truck road and logging railroad. As we view it, if the right of way was condemned without the main reservation above referred to, these objections and assignments of error, based thereon, are rendered nugatory. We consider some of the reservations for the right to construct crossings over the right of way entirely different from the indefinite permissive use of a portion of the right of way.

■ Reservation No. 4 reserves to the defendants the right to use and make reasonable grade crossings across said right of way, as well as overhead crossings for the use of donkey engines or other mechanical appliances in the operation of high lines and back lines, or other lines and cables in hauling and transporting saw logs and timber across said right of way at suitable places. We see no reason for not making such reservation. Therefore we approve the same.

■ The fifth reservation permits the defendants to make grade or overhead crossings across said right of way so as to cross the South Fork of Coos river in the vicinity of and afford access to lots 4 and 5 of section 26 on the south side of the river, and to afford use of any natural fords across such river where the same flows through or past said lots 4 and 5, so as not to unreasonably interfere with the operations of the plaintiff. We approve this reservation No. 5.

■ By reservation No. 6 the defendants are permitted to enter upon the right of way appropriated for

the purpose of access to, and the reasonable use of, the spring near the milk house on the lands of the defendants in lot 9, section 27, and the waters of such spring. This can easily be granted to and used by the defendants without any material interference with the operations of plaintiff, and such reservation is approved and affirmed. The testimony in behalf of plaintiff plainly shows that there will be no damage to the spring.

■ Reservation No. 7, in which defendants are given the right to make a grade crossing to, over and upon the right of way from the house and barn of defendants, is reasonable and proper and is approved and affirmed.

■ Reservation No. 8 reserves the right to defendants to make grade crossings across said right of way, so as to have access over said right of way to the orchard and summer cottage of said defendants and the area of bottom and high bench land surrounding the same. Such right can be retained by the defendants without any appreciable interference or hindrance to plaintiff in its logging operation by truck or railroad, or the use of the right of way. The judgment is affirmed as to such reservation.

■ Reservation No. 9 provides that defendants shall have the right to lay water pipes across said right of way for the purpose of conveying water from any spring, well or watercourse on the lands of defendants across said right of way, such use by defendants to be made by them in a manner so as not to unreasonably interfere with the plaintiff's use of such right of way. This is a very simple and necessary reservation to be contained in the judgment and is approved and affirmed.

■ Reservation No. 10 provides as follows:

"That the defendants shall have the right to use any truck road constructed by the plaintiff between Stake No. 1 hereinabove described as station 2 plus 97 of plaintiff's said survey and station 53 plus 16.3 and between Stake No. 5 hereinabove described at station 37 plus 83 and station 26 plus 42.5, hereinabove described, for the purpose of passing thereon and thereover, by foot, with horses, cattle or other livestock, by motor or other vehicles to enable the defendants to have access to their cleared or improved lands and any buildings on said lands off said right-of-way sought to be appropriated herein with the right to use and maintain suitable gates for the purpose of affording such passage, and after said logging railroad is constructed to similarly pass over such portions of such right-of-way as are not occupied by the ties and rails of the plaintiff, such use by the defendants to be made by them in such a manner as not to unreasonably interfere (a) with the use of such right-of-way by the plaintiff, its successors and assigns, in its logging operations by truck or railroad; (b) with the construction, grading, repair, maintenance, use and operation of said right-of-way by the plaintiff or any truck road or logging railroad thereon, or its right to improve the same according to good logging practice for the transportation of logs by truck and railroad."

The judgment in regard to this reservation is approved and affirmed.

It is believed from the testimony that the reservations of these small matters, which have been approved, would not decrease or affect the amount of defendants' damages, and the amount of the damages, as found by the special verdict, should stand as found without any reduction for these slight reservations which we have approved.

■ The parties to this case have had the benefit of a trial by jury. Everything was carefully explained and

the jury passed upon the question, as indicated, in two verdicts. It perhaps should be remembered that the right of appeal is a statutory right and one taking an appeal from a judgment, based upon the verdict of a jury, does so subject to the constitution of the state of Oregon and the statute governing such appeals. For the court to make a change in the judgment appealed from does not in any way deprive either party of the right of trial by jury.

Assignment of error No. 1 relates to a number of questions asked of the engineer, George Dutch. One question, relating to the use of the spring by the Barclays, as set forth in reservation No. 6, was whether the road could be practically constructed without destroying or damaging the spring. The witness, on behalf of plaintiff, answered in his opinion that it could be. This witness stated, with reference to reservation No. 2, in substance, that defendants could have their rights, which would be of practical utility to them, without interfering with the rights of the Coos Bay Logging Company. With reference to reservation No. 3, this witness stated that the rights therein specified would be of practical utility to defendants and could be granted without unreasonably interfering with each other's use of the road. The same witness testified as to reservation No. 4, that defendants could haul logs across the right of way and use donkey engines without interfering with each other's use, and that it would be mutually practicable and of practical utility to both. Testimony to the same effect was given as to reservations Nos. 5 and 6.

We do not hold that a limited easement cannot be condemned under the law of eminent domain, see *Oregon-Washington R. & N. Co. v. Spokane P. & S. Ry. Co.*, 83 Or. 528, 538 (163 P. 600, 163 P. 989, Ann. Cas.

1918C, 991), but in order to do so the easement and the reservation or limitation must be specifically described.

We do not question but that the authorities fully sustain the position that the condemnor may impose a limitation upon itself by stipulating to construct the work in a specific manner. Where a limited right is desired, the limitation should be made a part of the record, by being embodied in the petition or order of condemnation or otherwise: 2 Lewis, Eminent Domain, (3d Ed.) 1247-8, § 712. This does not change the requirement which we have suggested that the limitation should be specific. That is, in order for the plaintiff to obtain a limited use to the way proposed, that right should be specifically defined, as above suggested.

■ The complaint filed contains a correct description of the right of way and the various widths appropriated, which the record shows to be necessary for the truck road and logging railroad right of way. The description of the right of way was thoroughly checked by an engineer called by defendants Barclay. The testimony describes in detail the terrain and adjacent territory. Where the width is over 60 feet it appears to be because of the necessity of a cut. The preliminary line and profile solved the required width of the right of way.

The testimony, the decription of the right of way, and the maps and plans thoroughly present the matter to the court for the purpose of passing upon the same, and we think there is no necessity for any further hearing in the case. The testimony clearly shows that the right of way described and the widths sought are necessary for the purposes required by the plaintiff, and that it gives an easy grade, a maximum of 2 per cent that the right of way sought is feasible and practicable and the best route up the river, and that the survey

line is above the high-water mark of winter freshets, which high-water mark is shown by the red line on the map.

Under the constitution and the statute, it is legal and appropriate that the right of way should be condemned.

Assignment of error No. 2 relates to the matter of whether it is practical to operate a logging road in such a way as not to unreasonably interfere with defendants or defendants with the Coos Bay Logging Company, or whether its ordinary operation, running trains and cars up and down on it would interfere in any unreasonable manner at all with the logging of Mr. Barclay's timber across the river. We think this question is eliminated by the rejection of the main reservations, as above indicated. The same may be said in regard to assignment of error No. 3. Assignments of error No. 1, 2 and 3 relate to the main question in the case.

■ Assignment of error No. 4 relates to the cost of moving the Buzzard house, which is off the right of way. The trial court ruled, and we think correctly, that:

"The jury will be permitted to consider the extent, if any, of the damage to the balance of the tract, from the appropriation of the land within the right of way, and included in that to consider any inconvenience resulting from the proximity of the condemned strip to the house, but the court is of the opinion that the question of the cost of moving a house not on the right of way would be too remote, especially in view of the fact that there is no knowledge which we could obtain at this time as to how far or where the house would be moved."

There was no error in so ruling.

■ Assignment of error No. 5 relates to an objection to the question of an opinion as to the reduction of value

of a residence. The witness stated that he was not able to give an opinion on that matter. There was no error in sustaining the objection.

The law is settled in this state that a witness cannot be permitted to give his opinion of the amount of the damage resulting from an act or omission complained of and that where such opinion has been given in a case the judgment must be reversed unless the verdict is for such a small amount that it is apparent that the error is harmless. The witness should state the facts, such as the value of the land taken, and all the facts pertaining to the defendants' claim, and let the jury pass upon the amount of the damages: *Smith v. Pallay,* 130 Or. 282, 288 (279 P. 279); *Boyd v. Grove,* 89 Or. 80, 85 (173 P. 310); *Daniels v. Northern Pac. Ry. Co.,* 88 Or. 421, 424 (171 P. 1178); *Pacific Ry. & Nav. Co. v. Elmore Pkg. Co.,* 60 Or. 534, 538 (120 P. 389, Ann. Cas. 1914A, 371).

Error is predicated upon the refusal of the court to permit the witness T. H. Benham to testify as to the price paid for a right of way across his land for a railroad.

Evidence of sales of neighboring lands, even where permitted, is not admitted unless voluntary on both sides. A sale which is not voluntary has no tendency to prove market value. It is not competent for either party to put in evidence the amount paid by a condemning party to the owners of neighboring lands taken at the same time and as part of the same proceedings, however similar they may be to that in controversy, whether the payment was made as the result of a voluntary settlement, an award or verdict of a jury. The rights of an owner to recover just compensation for the taking of his land are not to be measured by the generosity, necessity, estimated advantage

or fear or dislike of litigation, which may have induced others to part with title to their real estate or to relinquish claims for damages by reason of injuries thereto; and it would be equally unwise, unjust and unpolitic to make it impossible for a corporation to compromise the claims of one owner without furnishing evidence against itself in the cases of all others who had similar claims. If a sale is made to a corporation about to institute condemnation proceedings, if it cannot acquire the land by purchase at a satisfactory price, the price paid is not a fair test of market value: 2 Lewis on Eminent Domain (3d Ed.) 1147, § 667; 2 Nichols on Eminent Domain, (2d Ed.) 1199, § 456; *Cleveland Etc. Ry. Co. v. Smith*, 177 Ind. 524 (97 N. E. 164); *Sawyer v. Boston*, 144 Mass. 470 (11 N. E. 711); *MacNaughton v. Commonwealth*, 220 Mass. 550 (108 N. E. 357). There was no error in such ruling. The rule above stated has been applied in this court: *Pacific Ry. & Nav. Co. v. Elmore Pkg. Co.*, supra; *Oregon R. & N. Co. v. Eastlack*, 54 Or. 196, 202 (102 P. 1011, 20 Ann. Cas. 695).

There is no basis for error in the rulings in regard to the testimony of the witness Benham. He was not familiar with the market value of the Barclay lands.

By requested instructions and otherwise, defendants challenged the legality and constitutionality of the proceedings to condemn the right of way. Article I, § 18 of the Constitution of Oregon, provides as follows:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered; provided, that the use of all roads, ways and waterways necessary to promote the transportation of the raw products of mine or farm or forest or water for

beneficial use or drainage is necessary to the development and welfare of the state and is declared a public use.''

Sections 37-201 to 37-208 provide the means for carrying the constitution into effect. The constitution and the statute, in effect, declare that the transportation of the raw products of the forest, for a beneficial use, is necessary to the development and welfare of the state and is declared to be and is a public use. See, as instructive upon this question, *Smith v. Cameron,* 123 Or. 501 (262 P. 946); *Bridal Veil Lumbering Co. v. Johnson,* 30 Or. 205 (46 P. 790, 34 L. R. A. 368, 60 Am. St. Rep. 818); *State v. Hawk,* 105 Or. 319 (208 P. 709); *Dallas v. Hallock,* 44 Or. 246, 252 (75 P. 204); *Apex Trans. Co. v. Garabade,* 32 Or. 582, 587 (52 P. 573, 62 L. R. A. 513); *Flora Logging Co. v. Boeing,* 43 F. (2d) 145.

The propriety of taking property for public use is a political question to be determined by the legislature, either directly or by delegating the power to public agents, proceeding in such manner and form as may be prescribed: *Dallas v. Hallock,* supra. So also the question of the necessity and expediency of taking private property for public use is a legislative question; however, the question of necessity is not involved in this case, as the stipulation of the parties obviates this.

Defendants raise the question whether sections 37-201 to 37-208, Oregon Code 1930, is a constitutional grant of power to the owner of timber lands. This statute permits the constitutional provisions to be carried into effect which, in the absence of an enabling statute, might be considered not self-executing. In 1920, the constitution was amended by adding the words:

"provided, that the use of all roads, ways and waterways necessary to promote the transportation of the raw products of mine or farm or forest or water for beneficial use or drainage is necessary to the development and welfare of the state and is declared a public use." Art. I, § 18, Constitution of Oregon; see also *Smith v. Cameron*, 106 Or. 1, 7 (210 P. 716, 27 A. L. R. 510).

■ Where the power to take private property for public use has been conferred by the legislature, it rests with the grantee to determine whether it shall be exercised, and when and to what extent it shall be exercised, provided that the power is not exceeded or abused. Courts cannot inquire into the motive which actuated the authorities: 1 Lewis on Eminent Domain, (3d Ed.) § 370; *State v. Hawk*, supra.

■ The changes in the constitution have not altered the rule of law that, whether the proposed use is in fact public, it is a question for the determination of the court: *Bridal Veil Lumbering Co. v. Johnson*, supra; *State v. Hawk*, supra; *Dallas v. Hallock*, supra.

Defendants contend that the plaintiff seeks a monopoly of the right of way for the removal of billions of feet of timber, much of which is within the public domain and on numerous tracts owned by other persons. With this contention we are unable to agree. We see no reason why any of the owners of the timber referred to cannot take measures to obtain a right of way for the transportation of such timber.

We have carefully examined all the instructions of the court, and, excepting as to the question heretofore mentioned, we approve them.

■ Our constitution, Article VII, section 3, provides that upon an appeal of any case to the supreme court either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the

jury, and any other matter material to the decision of the appeal. The section reads further:

"If the supreme court shall be of the opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the supreme court shall be of the opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the supreme court; * * *"

The complete record, all of the testimony and instructions of the court, are before us. By virtue of the authority of this organic act, in the instant case we find that the plaintiff is entitled to judgment condemning the right of way described upon the payment of $2,060 damages, the amount found by the jury in the special verdict, without any deduction therefrom on account of reservations Nos. 4, 5, 6, 7, 8, 9 and 10, which we have approved, as above stated. We do not think the amount of the damages should be lessened or changed on account of these simple reservations, which can interfere in no way with the plaintiff's right to the use of the right of way or road.

The circuit court is directed to enter a judgment in accordance with the modification above mentioned. Except as to this modification the judgment of the circuit court is affirmed.

BELT, J., not sitting.

RAND, J., took no part in the consideration of this case.